## UNION PAC. RY. CO. *v.* O'BRIEN.

*(Circuit Court of Appeals, Eighth Circuit. February 8, 1892.)*

1. INJURY TO EMPLOYE—OPINION EVIDENCE.
   In an action for the death of plaintiff's husband, a locomotive engineer, alleged to have been caused by the faulty construction of a portion of defendant's railroad, an engineer, testifying for plaintiff as to the faulty condition, should not be allowed, on cross-examination, to state that the engineers on the road were all aware of such condition, it being a mere inference.

2. SAME.
   Ordinary care in the construction of a railroad through a cut in a mountain side, which was alleged to be faulty in not providing a culvert under the track to carry off the washings from a natural gully, cannot be shown by the opinion of a witness that the cut was constructed and the water run out of it exactly as others are ordinarily constructed on roads running through such places.

3. WITNESS—IMPEACHMENT.
   In introducing impeaching testimony, by showing former contradictory statements, it is within the discretion of the trial court to permit a leading question to be put to a witness where that mode of interrogation is best calculated to elicit the truth.

4. NEGLIGENCE—BURDEN OF PROOF.
   In an action to recover for the death of plaintiff's husband, alleged to have been caused by defendant's negligence, a request to charge that the burden is on plaintiff, in the first instance, to show that "plaintiff" was in the exercise of due care, being misleading in the use of the word "plaintiff," is properly refused.

5. SAME—MISLEADING INSTRUCTIONS.
   A request for an instruction confusing together two distinct propositions—that relating to the risks assumed by an employe in entering a given service, and that relating to the amount of vigilance that should be exercised under given circumstances—is properly refused, as liable to mislead.

6. INJURY TO EMPLOYE—ASSUMPTION OF RISK.
   Plaintiff's intestate, an engineer in defendant's employ on a division of its railroad constructed along the foot of mountain ranges, was killed by the derailment of his engine by reason of sand and gravel on the track, which, during a storm, had washed down from the mountain side, through a natural gulley, into the railroad cut, and, there being no culvert for its escape under the track, was deposited thereon

to the depth of six inches. *Held* that, while intestate assumed the increased hazard of his employment due to the fact that the road was constructed through a mountainous country, he did not assume risks caused by faulty construction and maintenance of the road-bed and track, even though liability to accidents thereby was increased because the road was built in proximity to mountain ranges.

7. SAME—QUESTION FOR JURY.

The question of negligence in not constructing a culvert in the place in question was one for the jury, to be determined on the evidence as to the construction of the road, and the formation of the land. *Tuttle* v. *Railway Co.*, 7 Sup. Ct. Rep. 1166, 122 U. S. 189, distinguished.

In Error to the Circuit Court of the United States for the District of Colorado.

Action by Nora O'Brien against the Union Pacific Railway Company, to recover for the death of plaintiff's husband, alleged to have been caused by defendant's negligence. Verdict and judgment for plaintiff. Defendant brings error. Affirmed.

*John M. Thurston, Willard Teller, H. M. Orahood,* and *Edward B. Morgan,* for plaintiff in error.

*H. E. Luthe,* for defendant in error.

Before CALDWELL, Circuit Judge, and SHIRAS and THAYER, District Judges.

SHIRAS, District Judge. In September, 1890, John O'Brien, the husband of the defendant in error, was in the employ of the Union Pacific Railway Company as a locomotive engineer, running an engine upon the South Park Division of the company's line. By a derailment of his engine on the 4th day of September, 1890, the said John O'Brien was killed, and the present action was brought by his wife to recover damages therefor.

The evidence shows that the accident occurred about 1 o'clock in the morning of the day named, at a place known as "Platte Canyon," the deceased being in charge of an engine which was propelling a train of freight-cars, some 23 in number; that the line of railway is built along the South Platte river, and of necessity there are numerous cuts thereon, caused by the intersection of the line with the spurs projecting from the high lands along which the line is built; that the engine was derailed by reason of sand and gravel which had been washed upon the track to the depth of some 6 inches, and to a width of about 15 feet; that this deposit of sand and gravel was in a cut, the river bank of which was 6 or 8 feet high, the other bank being much higher, and sloping up the side of the hill or mountain; that on the hill-side of the cut there was a gulley running back for some distance, which in times of rain would bring down sand and other material; that there was no opening or culvert under the railway track, through which the water and the material brought down by it could escape; that there was along-side the road-bed a small gutter, but, if the water coming down was greater in quantity than this ditch or gutter would carry away, then the surplus would run over and upon the track and rails of the railway; that during the evening preceding the accident rain had fallen, and the water, rushing down the gully named, had carried the sand and gravel upon the track to the

extent already stated. The case was sent to the jury upon the issues of negligence on part of the company in not properly constructing the track, in that no outlet was provided for the water which would be liable to come down upon the track, and deposit thereon sand and other obstructions, and of contributory negligence on the part of the deceased; and, upon both issues the jury found in favor of the plaintiff, assessing the damages at $3,000, and, judgment being entered upon the verdict, the company brings the case to this court.

The first error assigned is based upon the action of the court in sustaining an objection to a question asked by the plaintiff in error in cross-examination of a witness, (William Hall,) who testified that he was a locomotive engineer, and was well acquainted with the line of railway upon which the accident happened; that there are many cuts upon the line; that in August and September rains were usually frequent, and that in rainy weather, on account of the steepness of the mountains, more or less sand would be deposited on the track. Thereupon, counsel for the company asked the question, "Are the engineers all aware of that fact?" which was objected to, and the objection was sustained. It is perfectly clear, from the context, that the purpose of this question was to get the witness to testify to a matter purely of inference from the facts he had previously stated; that is, he had testified that, owing to the surroundings of the railway line, in rainy weather more or less sand would be deposited at various points along the line, and the question objected to was asked with the view of having the witness draw the inference that the frequency of the deposits would necessarily bring knowledge of the fact to all the engineers running on the line. The facts having been fully put in evidence, it was for the jury to determine whether the facts proven would justify inference of knowledge on part of all the engineers; and it was not error, therefore, to sustain the objection to the question proposed.

The second error relied on arises on the refusal of the court to permit the same witness, after testifying to facts tending to show the need of a culvert at the cut, where the accident happened, and that in his judgment a culvert would add to the safety of the road, to answer the question: "You said you thought the culvert would make it much safer; but is not that cut constructed there and the water run out of it exactly as others are ordinarily constructed on roads running through such places?" It is argued on behalf of plaintiff in error that if the company could show that this cut was constructed as cuts in similar places on roads running through a region of like character, it would be evidence tending to show that it had used ordinary care in the construction of this cut. If a bridge upon a line of railway breaks down, the company may show that the bridge is of an improved make or pattern, and is in common use upon other lines of railway, as evidence tending to show that the company was not in fault in using that make of bridge. If the issue is whether the company uses proper precautions to prevent the escape of sparks from its locomotives, it may show that the same are equipped with the appliances in common use upon other roads. If the charge of

negligence is that the company did not use ties of sufficient size or of proper material, or used rails that were not of sufficient weight, then it might be competent to show that upon other roads, carrying on the same kind of traffic, similar ties or rails were in common use, and were found to meet the demands put upon them. In all such cases the inquiry is whether the use of a particular article is justified by the usage of other companies, and there is no danger of the jury being misled as to the exact nature or mode of construction of the article inquired about.

It cannot be claimed that cuts upon railways are made according to a certain recognized pattern. The necessity of a culvert or water outlet in a cut depends upon the surroundings, in which no two are exactly alike. We know from our common knowledge that in many cuts there are to be found culverts, and in others there are none. It would have been of no aid to the jury to have proved that in many cuts no culverts were used, without further showing that the surroundings thereof were substantially similar to that where the accident happened; and this would have required an examination into a number of collateral facts, that would have led away the jury from the issues on trial before them. It is said that the question as put to the witness met this difficulty, in that it asked whether the cut was not the same as the "cuts ordinarily constructed on roads running through such places." This would necessitate one of two results. The witness must, in his own mind, determine whether the places referred to were in fact similar to the one where the accident happened, and the jury must be satisfied to take the opinion of the witness on the fact of the similarity of the respective cuts and their surroundings, or else the witness must describe in detail all the cuts he knew of "running through such places," which could only result in utterly befogging the jury; because, if that line of inquiry should be opened to the one party, the other must be permitted to show the nature of the cuts in which culverts are found, and also to introduce evidence showing the actual nature and surroundings of the cuts which might be described by the witness.

Under all the circumstances, and in view of the fact that the contention of the plaintiff was that the making of an outlet for the water was demanded in this particular cut, by reason of the track crossing a gulch or natural water-way, and not simply because it passed through a cut, which fact is not included in the question asked, and for the reason that if that line of inquiry was entered upon, there was danger of distracting the jury by leading them off upon collateral matters, we cannot hold that it was error to exclude the question.

The third assignment of errors is that the court erred in permitting leading questions to be put to the witness O'Brien. The defendant had called as a witness George Warnick, who testified to matters tending to show that the deceased had not kept a vigilant watch for obstructions on the track, and on cross-examination he was asked whether, shortly after the accident, he did not, in reply to questions put to him by the witness O'Brien, state that neither he nor the engineer were to blame for

the accident. For the purpose of impeaching the witness Warnick, O'Brien was called in rebuttal, and he was asked directly whether he had put certain questions, which were detailed to him, to Warnick, and whether the latter had not answered them "Yes" and "No." When impeaching testimony of this character is sought to be introduced, it is within the discretion of the trial court to permit a catagorical or leading question to be put to the witness, where that mode of interrogation is best calculated to elicit the truth. 1 Greenl. Ev. § 435.

It is further assigned as error that the court refused to give the instructions asked by defendant, which were four in number, and read as follows:

"The court is asked to instruct the jury that the burden of proof is upon the plaintiff to show that the accident occurred by reason of the negligence of the defendant, and that the plaintiff was in the exercise of due care at the time of the accident, and that due care in such a case required of the deceased that he be vigilant and watchful to avoid such danger as his experience of the road must have made him aware he must expect in such places as the place where the accident occurred, and under the circumstances detailed by the witnesses, to-wit, at a time when heavy rains had been met with, and that there has been offered no evidence whatever upon that point by the plaintiff, not even a reputation for care, but there has been evidence offered by the defendant that he was not in the exercise of due care; nor has there been any evidence offered as to whether, if the sand had been discovered at the time it might have been discovered, he could or could not have applied the air-brake in time to prevent the accident."

"The court is asked to instruct the jury that a party taking employment as an engineer in running a locomotive assumes the risks that are incident to the employment, and to the running of locomotives over the roads operated by his employer; and if the jury believe that the country through which this road ran and its location was such that sand was frequently deposited on the track, then the deposit of sand on the track when heavy rains occurred must be taken as one of the ordinary risks of his employment, and the duty of the engineer was to be vigilant in avoiding it; and, if the jury believe that the lack of such vigilance on the part of the deceased contributed to the accident, then the plaintiff cannot recover."

"The court is asked to instruct the jury that the duty that an employer owes to the employe is to exercise ordinary care in providing the employe a safe place in which to work; and what is ordinary care is such care as men of ordinary prudence use in similar circumstances in the same employment."

"The court is asked to instruct the jury that there is no evidence to show that the construction of a culvert at the place where the accident happened would have avoided, or would probably have avoided, the accident."

The first instruction is faulty, in that it declares that the burden was on the plaintiff in the first instance to show that the "plaintiff" was in the exercise of due care at the time of the accident. It is said that the use of the word "plaintiff" was evidently a clerical error, and that it would be readily perceived that it was intended to charge that it must be shown that the deceased was free from negligence; but, if the charge had been given as asked, it might have misled the jury. As framed, it does not state the law correctly, and therefore it cannot be successfully

maintained that it was error to refuse it, especially in view of the fact that the court did instruct the jury carefully and fully upon the question of negligence on the part of the deceased.

It is claimed on behalf of plaintiff in error that the second instruction asked by the company presents the rule that an employe assumes the ordinary risks of his employment, and cannot recover for an injury resulting therefrom, and that the court did not present this question to the jury. It is doubtful whether the instruction was intended to refer to this rule, for the concluding part thereof only asks the court to rule to the jury that, if lack of vigilance on the part of the deceased contributed to the accident, then the plaintiff could not recover, and it is entirely probable that the trial court understood the instruction to be applicable only to the question of contributory negligence, which was fully covered by the charge of the court.

If the present contention of counsel is correct, then the instruction, as asked, is open to the objection that it confuses together two distinct propositions, to-wit, that relating to the risks assumed by an employe in entering a given service, and that relating to the amount of vigilance that should be exercised under given circumstances; a mode of asking instructions which cannot be approved, as it is liable to mislead the court and to confuse the jury. Granting, however, to the plaintiff in error the benefit of the exception now urged, it does not appear that it was error to refuse the instruction under the circumstances of this case. It is doubtless true, as urged in argument, that persons employed upon lines of railway which are constructed at the foot of mountain ranges are necessarily subjected to greater dangers than those employed upon railways passing through a prairie country, for the reason that there is greater liability to obstructions being thrown upon the track in the one case than in the other; and it is unquestionably true that one who engages as an engineer or other train-hand upon a line running at the foot of a mountain range assumes the increased risk due to this fact. In neither case, however, does the employe assume the risks and dangers that are caused by negligence on part of the railway company. It is the duty of the company to use all such reasonable care, as a corporation managed by prudent men should use, in constructing and maintaining a track and road-bed in such a condition as not to subject its employes to unnecessary risks and dangers. What will be required of a company in the exercise of ordinary care in constructing its track will vary with circumstances. A mode of construction which might be entirely safe in case of a line running through a level country might be wholly unsafe if applied to a line running along a mountain range. The employe has a right to expect that a company operating a line, which by reason of its location is subject to certain hazards, will construct the road-bed and track with due reference to such hazards. If the company has used due care in the construction of its line, having regard to its surroundings, and yet, by reason of its proximity to mountains, rivers, or other natural objects, there exist dangers from land-slides or overflows, or other like casualties, a person entering into service of the company assumes

the risks caused thereby, or, to state the proposition in another form, he assumes the dangers incident to his employment upon a railway track properly and carefully constructed and maintained along a mountain range; but he does not assume the risks caused by the faulty construction and maintenance of a road-bed and track, even though the liability to accidents, by reason of the imperfect road-bed and track, may be increased because the same is built in proximity to a mountain range. In the case at bar the deceased, when he entered the employ of the company, had the right to assume that the road-bed and track which he was expected to use had been constructed properly, and with ordinary care, having due regard to the location of the track and its surroundings; and if such a road-bed and track, so constructed and maintained, were in fact furnished him, then he assumed the risks and dangers due to the fact that the line ran along the foothills, and would, of necessity, be subject to the possibility of obstructions being cast upon the track from the adjacent mountains. The plaintiff's case, however, is not based upon the fact that the proximity of the railway line to the highlands caused danger to the employes, but upon the allegation that the company, in constructing its road-bed over what nature had marked out as a water-way,—to-wit, the gulch upon the hill-side,—did not use due care, and was negligent in that no outlet was provided for the water, which the company was bound to know would in the rainy seasons come down the gulch, bearing with it sand, gravel, and other like material. The question is not other nor different from that which arises in all cases where a railway is constructed over a natural water-way, whether in a prairie or mountainous country. The duty is upon the company to use due care to so construct its road-bed at the place where it crosses the water-way that it may be reasonably safe for use; and if to that end a culvert or other means of escape for the water is necessary, and none is provided, but, on the contrary, the road-bed is built solidly across the water-way, thus subjecting the track to the liability of being covered with sand and gravel, then a jury would be justified in finding that the road-bed was improperly built, thereby sustaining the charge of negligence against the company. If the evidence in this case had shown that, owing to heavy rains, or for any reason, sand, rock, or other obstructions had been washed down the mountain side and upon the track at a place where the company had no special reason to anticipate such an event, then there would be force in the position that the deceased assumed risks of that character; but the facts developed in the evidence did not present the case in that light. The evidence clearly shows that the sand and gravel on the track were washed down the gulch or natural water-way, and the theory of plaintiff's case is that the company was negligent in building a solid road-bed across a natural water-way, and in failing to provide any means for the escape of the water that must be expected to flow down the gulch. Upon this issue the case was sent to the jury, and the giving of the second instruction asked by defendant would not have aided them in reaching a conclusion thereon. Hence, in any view that may be taken of the extent and purpose of this instruction, it was not error to refuse it.

The third instruction was fully covered in the charge given, and the court was not called upon to repeat the same general rule of law in the form adopted by counsel.

The fourth instruction was properly refused, because there was evidence before the jury tending to show that if a culvert or other outlet for the water coming down the gulch at the place of the accident had been provided, the track would not have become covered with sand and gravel.

In order that it may clearly appear that, as already said, it was not error to refuse the several instructions asked by the defendant, because the same, in so far as they are correct statements of the law, are embraced in the charge of the court, it may be advisable to quote at length therefrom. It was stated to the jury by the court that—

"The rules to be applied in determining this controversy, gentlemen, are applicable to all cases in which a person in service may have a right of action against his employer. The circumstance that the defendant is a railroad company does not distinguish the case from others of the same class. In general, a person who receives an injury while in the service of another has no right of action against his employer for such injury. It is only when the person employing him has omitted some duty—failed in something enjoined upon him by the law—that any such right arises. And this right arises only when the person injured is in the discharge of his duty to the extent that it may be said that he is free from fault. The person injured must be without fault, and the employer must be in fault, before any right of action can exist. So in all these cases there is a double aspect. It is *first* to be ascertained whether the person injured was in any way negligent; and, *secondly*, whether the employer was negligent in a manner which caused the injury. These features must co-exist; the person employed must be without fault, the other must be in fault. If the employer had been in fault, and the other has been negligent also, there is no right of action.

"(2) And in this instance, upon the circumstance developed by the evidence, it is especially necessary to consider first, and decide, whether this man who lost his life was in fault at the time of the accident. There is some evidence tending to show that storms in the region of country traversed by this railroad are of frequent occurrence in the fall season of the year, and with the effect often to bring down upon the track considerable quantities of sand and gravel; so that, with a storm prevailing at and before the time of the accident, the circumstances were such as to make it reasonable to expect that some such thing would occur as did in fact occur, in respect to washing down gravel and sand upon the track; and this made it the duty of the engineer to look out for these things very carefully. It was necessary for him, under all the circumstances, to be especially upon his guard in order to avoid injury to his train and to himself. And there is evidence tending to show that he was not in that attitude at the time of the accident. You remember that the fireman who was with him upon the engine states that at the time of the accident he was of the impression that the engineer was asleep. He cannot state this with certainty, only from the position in which he sat, and from his attitude at the time. Now, if that be true, there can be no right of action in the plaintiff here for his death, because all the circumstances required him to be vigilant and attentive to his duties in the place in which he was put. If he had been awake, and looking out for obstructions upon the track, it might be that he would have seen this obstruction in time to stop, or at any rate to check the train, so that the engine would not have been overturned, and thus the injury would not have resulted."

The court then instructed the jury that the plaintiff could not recover on the ground that the sectionmen had not properly watched the track for obstructions, which was one of the matters complained of, for the reason that such negligence, if it existed, would be due to the act of a fellow-servant, for which the company would not be liable, and then gave the following instructions, the giving of which is assigned as error:

"(5) There is, however, another matter which stands in a different attitude, and that is as to the construction of the road at the place where the accident occurred. There is testimony to show that the road at that place was built across the mouth of the gulch or draw, and, if I understand the testimony well, about upon the same level as the mouth of the draw, and that the gap which was made by the draw below the track, and towards the river, on the right-hand side coming this way, was closed up by the earth taken from the cut, or perhaps by the sand which had washed down; and it would seem from all the circumstances detailed in evidence that it would have been practicable to make a culvert under the track at that place, keeping open the channel towards the river, through which the sand might have washed out towards the river, and in that manner obstruction might have been avoided at that place. The testimony is perhaps not as full and complete on this point as it might have been made, but I think, from all that is stated before you, it is fairly open to this construction. Of course, that would depend somewhat upon the size of the opening made in the culvert or channel underneath the track, and upon the quantity of sand and gravel coming down through the gulch; but, looking into all the circumstances, as well as you can understand them from the testimony, if you are of the opinion that the track might have been built in this way with reasonable expense, and so as to avoid the possibility of sand coming upon the track and obstructing it, you are at liberty to say that the company was negligent in respect to the manner of building the track at that place. It seems from the testimony that this track had been obstructed several times; I do not recall just now how often before this time; so that there was enough in the circumstances to call the attention of the company to the fact that there was danger from this source.

"(6) It is true that, in building its road, and as a matter of duty towards persons in its service, the company is only required to exercise ordinary diligence and care,—such care and diligence as men usually bestow upon business of the like nature; so that it is not the highest degree of diligence which you are to demand of the company in this respect, but only such as men ordinarily give to such concerns. Then the question will be in your minds, whether the road at this place was built with ordinary care and diligence, with a view to the protection of the lives of persons in the service of the company. The rule is different when it comes to the case of a passenger. A passenger who is injured may complain of almost anything as a defect in the road and its structure, showing negligence on the part of the company. But in respect to persons who are employed by the company, the rule is somewhat different; that is to say, there is a less degree of care and diligence required by the company in respect to the servants of the company than is required in respect to persons traveling on the road in the capacity of passengers. So, then, gentlemen, if you are able to relieve the deceased, in respect to saying that he was in the fulfillment of his duty, was performing well the duty which was required of him on the occasion, and that the company is negligent in respect to the manner of constructing its road, you may be able to find a verdict for plaintiff; otherwise for the defendant."

"(7) *Mr. Willard Teller.* I would like to ask specially referring to the question of this culvert. I would like to have the court charge the jury that there is no evidence except that of Mr. Hall in respect to whether a culvert would

be safer or not, and that is an opinion of his, that he thought it would be safer; that is the only evidence in respect to it.

"*The Court.* I believe that is true. I think that he is the only witness who testified in that way. I think also, gentlemen, you can consider the matter upon your own judgment and knowledge of such matters; that is to say, having regard to the testimony before you, the situation of the road, and the topography of the ground, the gulch coming down in the way described by the witnesses, you, as men of some knowledge of affairs, may determine in your own minds, quite independently of Mr. Hall's testimony, whether it was practicable to make a culvert there with reasonable cost, which would have the effect to carry away the sand and gravel so it would not be an obstruction; I believe they testify to some rock coming down in the sand; whether it would carry it away so it would not be an obstruction upon the track."

Exception is taken to the portions of the charge wherein it is said that the jury might exercise their own judgment and knowledge, upon the evidence adduced before them in regard to the situation of the road, the topography of the ground, and the existence of the gulch, and determine therefrom whether or not it was practicable to make a culvert at a reasonable cost, which would carry away the sand and gravel, and prevent the same from becoming an obstruction on the track. It does not appear that objection was taken to this evidence when it was introduced, and, if the jury could not properly consider and weigh the same in reaching a conclusion upon the issue before them, it was a useless waste of time to put it before them. Clearly, when the jury was called upon to determine whether a given part of the road was or was not properly built, it was necessary that they should be informed by evidence of the mode in which the track was constructed, of the nature of the ground and its surroundings, in order to aid them in reaching a proper conclusion. If admissible upon the issue, then it would be impossible to prevent a jury from using their own judgment and knowledge in determining what conclusion should be drawn from the evidence. The human mind is so constituted that, in considering and weighing different facts, and endeavoring to apply the same to the solution of a matter in dispute, the conclusion reached will be the result of the facts in evidence, viewed in the light cast thereon by the judgment and knowledge belonging to the deciding mind. There was nothing in the nature of the inquiry involved in the issue submitted to the jury which took it out of the usual rule that the jury must decide the ultimate question in dispute.

Counsel for plaintiff in error cite in argument the decision of the supreme court in the case of *Tuttle* v. *Railway Co.*, 122 U. S. 189, 7 Sup. Rep. 1166, wherein it was sought to hold the company liable in damages for the death of a switchman, who was crushed between two cars, the draw-heads of which passed or slipped by each other, which in turn was caused by the extreme sharpness of the curve in the line of the railway at the point where the accident happened. The ground of negligence charged was that the curve was so sharp as to render the road unsafe. It was held that there was no rule of law restricting a railway company, so far as its duty to employes was involved, in the character

of the curves it might put in use, and that engineering questions of this character could not be left to the varying and uncertain opinions of juries. It may well be, when it becomes necessary to build a line of railway through a rough and broken country, or to construct side tracks in the narrow limits of a railway yard, that it must be left to the engineer in charge thereof, assuming that he is of competent skill and acquirements, to define the curves that are called for by the exigencies of the situation; and, the road being built in accordance with his directions, that any one entering into the employ of the company must be held to have assumed the risks due to the sharpness of the curves, the existence of which is, of course, open to his knowledge. This principle, however, cannot be carried to the extent claimed in argument by counsel for plaintiff in error. If it was applicable in the broad sense claimed for it, the result would be that the well-established rule that it is the duty of the company to use due care and skill in the construction and maintenance of the road-bed and track, and in the furnishing of proper machinery for the use of its employes, would be wholly abrogated. In one sense, it is a question of engineering skill to determine how a road-bed and track shall be constructed; and, if the conclusion of the engineer in charge thereof is final, and cannot be challenged before a court and jury by one who has suffered injury by reason of defects in the road-bed and track, then it is useless to say that a railway company is bound to exercise due care in the construction of its road-bed, for it could always be prepared to prove that the road was built in accordance with the directions of its engineer. The difference between the kind of knowledge called into action in determining the sharpness of a curve that is needed in running a railway line at a given point and that exercised in determining whether the exigencies of a given situation require that some escape or outlet should be furnished for water liable to come down a natural water-way, intersecting the line of railway, is so great that it renders the rule applicable to the one case, inapplicable to the other. The training and knowledge of an engineer is not needed to enable one to understand the action of water in rushing down a gully or similar water-way, nor to know if an obstruction like a solid railway road-bed is built across a water-way, down which any considerable amount of water may be expected to pass, that, unless an outlet is given to it, it must of necessity collect against the road-bed, and perchance overflow it. Such facts are matters of common knowledge, gathered from the experience and observation of every-day life, and hence a jury is entirely competent to pass upon an issue involving considerations of that nature.

In the instructions given the jury the court very carefully presented the decisive questions involved in the issues, and correctly stated the law applicable thereto. The errors assigned are therefore overruled, and the judgment is affirmed, at cost of plaintiff in error.