POND v. MINNESOTA IRON CO.

(Circuit Court, D. Minnesota, Fifth Division. November 14, 1893.)

DEEDS—CONSTRUCTION—INDIAN SELECTIONS.

Where one entitled to select a quantity of land under an Indian treaty makes a deed of such quantity of lands by specific description, adding that "this description is intended to include any land or rights to land secured or intended to be secured" to the grantor by the treaty, and thereafter files a survey thereof in the general land office, stating that he has selected the described lands, but fails to receive a patent therefor, the deed must be construed to convey only the specific lands, and will not cover other lands selected and patented many years later.

At Law. Action of ejectment brought by Winthrop Pond against the Minnesota Iron Company. Judgment for defendant.

Charles N. Bell, H. C. Eller, and Harvey Officer, for plaintiff.

Draper, Davis & Hollister, (J. H. Chandler, of counsel,) for defendant.

NELSON, District Judge. This is an action of ejectment in which both plaintiff and defendant claim title from a common grantor, Francis Roussain, and by stipulation of parties the case is tried to the court without a jury.

I find the facts to be as follows: By article 5 of a treaty between the United States and the Bois Fort band of Indians, concluded April 7, 1866, and proclaimed May 5, 1866, Francis Roussain was entitled to select a tract of land not exceeding 160 acres, and to receive a patent therefor from the government. On May 5, 1866, Francis Roussain executed and delivered to Peck, Miles, and Ware, in the city of New York, for a paid consideration of $3,000, a certain warranty deed, the descriptive clause of which is as follows:

"All the right, title, and interest which the said Francis Roussain, Senior, has, or which he is entitled to, or may hereafter acquire, in and to the tract of land now occupied by him as a trading post on Lake Vermillion, in the county of St. Louis and state of Minnesota, aforesaid, embracing one hundred and sixty (160) acres of land, be the same more or less, with all the improvements thereon; this description being intended to include any land or rights to land secured or intended to be secured to the said Francis Roussain, Senior, by act of congress of or treaty with the United States."

Though Roussain had been in possession of this trading post for some time previous to the making of the deed, no survey of the lands had been made by the government. In the latter part of June, 1866, Peck had the premises surveyed, and in accordance therewith the following memorandum was prepared by him, and signed by Roussain:

"Description of Property Conveyed in the Foregoing Deed.

"Be it known that the land conveyed in the above deed is that of my old trading post, and is bounded as follows: Commencing at northeastern extremity of a point of land in Vermillion Lake, Minn., known as 'Roussain's Point,' and from which said northeasterly [extremity] a small island containing 5 64-100 acres, and included in this survey, bears north [here follow certain field notes] to lake on north side of point; thence eastwardly along the shore to place of beginning; containing, with small islands as shown on accompanying map, 160 acres.

"Attest: D. Geo. Morrison.                              his
                                          Francis X Roussain."
                                                mark.

This memorandum was delivered to Peck, and thereupon Roussain surrendered and Peck took possession of the premises. July 14, 1866, the deed, together with the memorandum, was recorded in the office of the register of deeds for St. Louis county, Minn. On the same day Roussain, by a letter under his own hand, notified the commissioner of the general land office at Washington, D. C., that he had made choice of the lands to which he was entitled under article 5 of the treaty of April 7, 1866; that they were located on the neck of land projecting into Lake Vermillion, which had been theretofore occupied by himself as a trading post; that a survey had been made of the same; that the lands so chosen were distinctly indicated by a map forwarded to the commissioner in the letter; that he had filed the original map of the survey in the land office at Duluth, and asked that a patent issue to him. A map was forwarded with the letter, and the description of the lands so se-

lected by Roussain. is the same as that in the memorandum. It does not appear that any further steps were taken by the general land department concerning this selection, and no patent was issued to Roussain for this land. Fourteen years afterwards, on August 27, 1880, Roussain selected and entered at the land office at Duluth the N. W. ¼ of section 33—62—15, which is the land in dispute, claiming to enter the same under the treaty above named; and he obtained a receipt from the receiver therefor, which was on August 31, 1880, duly recorded in the office of the register of deeds for St. Louis county, Minn.   August 28, 1880, Roussain and wife executed and delivered to Charlemagne Tower and Samuel A. Munson a full warranty deed of the last-described land for the paid consideration of $640, which deed was duly recorded August 31, 1880. In due course of time the government issued a patent for this land to Roussain, which was recorded May 31, 1882.   This land—the N. W. ¼ of 33—62—15—is not the land which was occupied by Roussain as a trading post, nor the land surveyed by Peck, but is distant therefrom some two and a half miles, and is not on Lake Vermillion.   Defendant and its grantors have been in possession of the land in dispute since 1880, and claim title under the deed from Roussain of August 28, 1880.   Plaintiff claims title under the terms of the conveyance to Peck, Miles, and Ware of May 5, 1866, and commences this action of ejectment.

I find as conclusions of law:

1. That the patent issued to Roussain was a valid execution of the terms of the fifth article of the treaty giving him 160 acres of land.

2. That the deed from Roussain to Peck, Miles, and Ware did not convey any other land than the trading post, of which a survey was made, and possession surrendered to Peck; and that the deed did not convey any interest in or right to the N. W. ¼ of section 33—62—15, the land described in the patent to Roussain and in the deed to Tower and Munson.

3. That the plaintiff is not entitled to recover in this action, and judgment is ordered for the defendant, with costs and disbursements.

Mem. The question is as to the effect and construction of the deed of May 5, 1866, from Roussain to Peck, Miles, and Ware. The first ·clause, "the tract of land now occupied by him as a trading post on Lake Vermillion, in the county of St. Louis, and state of Minnesota," speaks for itself.   It purports to convey a tract of land called "Roussain's Trading Post," the exact location of which was determined by metes and bounds, and recorded with the deed.   The real point in issue is as to the effect of the second clause: "This description being intended to include any land or right to land secured or intended to be secured to the said Francis Roussain by act of congress of or treaty with the United States."   The contention of plaintiff is that this latter clause conveys whatever interest Roussain might thereafter acquire, not only in the trading post, but, failing the acquisition of that property, in any tract which

Roussain might select in the future under the terms of the treaty of April 5, 1866; and the question presented is, does a fair, reasonable construction of the deed carry with it the right claimed by the plaintiff? In order to determine that, the intention of the parties is of vital importance. "If a question of law arises upon the construction of a deed it is the province of the court to construe it, and to decide from the language what the intention of the parties was. When the intention of the parties can be plainly ascertained, arbitrary rules are not to be resorted to. The rule is that the intention of the parties is to be ascertained by considering all the provisions of the deed as well as the situation of the parties, and then to give effect to such intention if practicable, when not contrary to law." 2 Devl. Deeds, § 836. Did Peck, Miles, and Ware intend to purchase not only the trading post, but was it in the minds of themselves and Roussain that, if the trading post should not be deeded to the latter by the government, then, in that event, they were to have conveyed to them whatever other tract of land Roussain might in the future select? Unless this can be fairly deduced from the terms of the deed, plaintiff must fail. Taking into consideration the provisions of the deed, and the situation of the parties, it seems to me clear that Peck, Miles, and Ware intended to purchase, and Roussain intended to sell, the trading post occupied by the latter on Lake Vermillion, St. Louis county, Minn., for the acts of the parties seem to point to no other conclusion. Here we find the sum of $3,000 paid for a hundred and sixty acres of land described as a trading post, a survey of the property made by one of the grantees, an acknowledgment by the grantor that the survey covers the premises named in the deed, a selection made, the original map of the survey filed in the land office at Duluth, also notice given by Roussain to the general land commissioner that the trading post, which was described by metes and bounds, with an accompanying map, had been selected by him under the treaty of April 7, 1866, and, finally, possession surrendered by Roussain and taken by Peck. The conclusion seems irresistible that the minds of the parties met; that Peck and others received what they intended to buy, and Roussain delivered what he intended to sell. They never negotiated for or purchased the N. W. ¼ of 33—62—15. The language used in the deed is clear, plain, and unambiguous, and I am of opinion that the acts of the parties thereafter unmistakably express their intention. I do not think that under any reasonable construction of the deed it can be said that Peck, Miles, and Ware proposed to purchase any 160-acre tract that Roussain might select in the future, but that they purchased for a consideration certain, by absolute description, the tract of land set out and described in the deed as "Roussain's Trading Post."

In Prentice v. Forwarding Co., 58 Fed. Rep. 437, the court says: "When the intention is manifest, it will control in the construction of the deed, without regard to the technical rules of construction." See, also, Hamm v. City of San Francisco, 17 Fed. Rep. 124; Steinbach v. Stewart, 11 Wall. 576; Prentice v. Stearns, 20 Fed. Rep. 819.

In order to sustain the contention of the plaintiff it becomes necessary to reject the entire first clause of the description, which, to my mind, clearly describes the particular land which it was the intention of the parties should be conveyed. I am of the opinion that the plaintiff cannot be permitted, after a lapse of 14 years, to repudiate the first clause of the deed, and, under the second clause, cover the land deeded to the defendant's grantors on August 28, 1880. In this view of the case, the question of notice has no bearing on the decision, and therefore is not passed upon.

Let judgment be entered for the defendant, with costs.