MYERS v. CHICAGO, ST. P., M. & O. RY. CO.

(Circuit Court of Appeals, Eighth Circuit. May 29, 1899.)

No. 1,092.

1. MASTER AND SERVANT.—OVERHEAD BRIDGES ON RAILROAD.

A railroad company cannot be held guilty of negligence which renders it liable for the death of a brakeman who was knocked from the top of a freight train while passing under a bridge on a city street, which was built by the company at the height required by the municipal authorities for public convenience, and where it had verbally warned the deceased of the danger of standing upright while passing the bridge, and also placed whiplashes, or telltales, at proper distances each side for the same purpose.

2. SAME—ASSUMPTION OF RISK.

Where deceased had been over the road for 50 days preceding, without objection, he must be held to have assumed the risk.

Caldwell, Circuit Judge, dissenting.

In Error to the Circuit Court of the United States for the District of Minnesota.

C. D. O'Brien and Thomas D. O'Brien, for plaintiff in error.

Thomas Wilson and L. K. Luse, for defendant in error.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

THAYER, Circuit Judge. In this case the Chicago, St. Paul, Minneapolis & Omaha Railway Company, the defendant in error, was charged with culpable negligence in maintaining an overhead bridge across its tracks at a street crossing, which was too low, as it is claimed, to permit brakemen, when on the top of freight cars, to pass thereunder with ordinary safety. The bridge to which this charge relates was located in the city of Hudson, Wis., and the plaintiff's husband, Edward Myers, who was a brakeman in the service of the defendant company, was knocked off from the top of one of its cars while he was passing under the bridge in the discharge of his customary duties, on a moving freight train, and was instantly killed. The accident occurred about noon on February 14, 1896. The trial court directed a verdict for the defendant company at the close of all the evidence, and the sole question for consideration is whether such instruction was properly given.

The evidence in the record shows that, at the place in the city of Hudson where the accident occurred, the defendant's track is laid for some distance in a cut, and that the track where thus laid is spanned by three overhead wooden bridges, one being at the crossing of Eighth street, one at the crossing of Seventh street, and one at the crossing of Third street. The distance between the Eighth and Seventh street bridges was about 442 feet, and between the Seventh and Third street bridges about 1,171 feet. The track slopes from the east to the west, the direction in which the train was moving when the accident occurred, the descent being at the rate of about 53 feet per mile, which appears to have been the lowest feasible grade, considering the character of the country. The deceased passed safely under the first, or Eighth street, bridge, but was knock-

ed off by the middle, or Seventh street, bridge. The bottom of the Eighth street bridge was about 20 feet above the top of the rail, while the bridges at Seventh and Third streets were somewhat lower, the bottoms thereof being about 18 feet and 1 inch higher than the top of the rail. The several bridges in question were built by the railroad company at the height prescribed by the proper city authorities of the city of Hudson, and, if they had been built higher, they would have impaired the use of the streets to some extent by making the approaches to the bridges inconveniently steep. For that reason the several bridges were built at the height last indicated. The testimony showed without contradiction that the deceased had passed under these bridges as a brakeman altogether about 50 times, and possibly more, shortly before the accident occurred, and that he had also been warned before the accident that the bridges were not of sufficient height—that is to say, the Seventh and Third street bridges —to permit a man to ride thereunder while standing fully upright on the top of the highest freight cars which sometimes passed over the defendant's road. Whiplashes, or telltales, were also suspended over the track at proper points before reaching the several bridges,— that is to say, east of Eighth street and intermediate the bridges,— which were in good condition when the accident occurred.

On this state of facts, which is all that the testimony discloses, we think that there was no substantial evidence to convict the defendant company of culpable negligence. It appears to have had good and sufficient reasons for constructing its bridges at the height above the track at which they were built, and for not giving them a greater elevation. It gave its employés, including the deceased, verbal notice that they could not ride under these bridges standing fully upright on all freight cars which might be in its trains, and, lest this warning might at times be unheeded, it suspended whiplashes above its track at proper points to remind its employés of danger immediately before the bridges were reached. Besides, the deceased had actual knowledge of the height of the bridges, having ridden under them daily for at least 50 days before the accident occurred. These facts not only rebut the charge of negligence, but show, beyond peradventure, that the deceased had assumed whatever risks the height of the bridges might impose on him while in the discharge of his duties. Brossman v. Railroad Co., 113 Pa. St. 490, 6 Atl. 226; Carbine v. Railroad Co. (Vt.) 17 Atl. 491; Smith v. Railroad Co., 42 Minn. 87, 43 N. W. 968; Devitt v. Railroad Co., 50 Mo. 302–305; Southern Pac. Co. v. Seley, 152 U. S. 145–155, 14 Sup. Ct. 530; Gibson v. Railway Co., 63 N. Y. 449, 453. The case at bar is clearly distinguishable from Railroad Co. v. Mortenson, 27 U. S. App. 313, 11 C. C. A. 335, and 63 Fed. 530, in which case this court held that it was for the jury to determine whether a railroad company was guilty of negligence where it appeared that it had built a bridge across a river the top of which was too low to allow brakemen to ride through the same while standing upright on many of the cars in use on its road, and had given its employés no warning of the danger by whiplashes or otherwise. The case is also clearly distinguishable from Railroad Co. v. Carpenter, 12 U. S. App. 392, 5 C. C. A. 551, and 56 Fed. 451, also

decided by this court, where a railroad company likewise failed to give any warning, by whiplashes or otherwise, of the danger incident to passing under an overhead bridge which was too low to admit of a person standing upright on the top of an ordinary freight car, and a stockman rightfully on the top of the train, who was ignorant of there being such a bridge, was injured while passing thereunder. The accident which occurred in the present case was probably attributable to momentary thoughtlessness on the part of the deceased, and was due to a risk of the employment, which the deceased must, in any event, be held to have voluntarily assumed. The judgment below is therefore affirmed.

CALDWELL, Circuit Judge (dissenting). It is elementary that it is the absolute duty of the employer to furnish the employé a reasonably safe place to work, having regard to the kind of work and the place and conditions under which it must necessarily be performed. Some kinds of work are necessarily attended with dangers to the employé which the employer cannot remove or abate by the exercise of reasonable care and diligence, and, when this is the case, the employé takes upon himself all the risks incident to the employment. But the employé does not take upon himself extraordinary and unnecessary risks,—dangers which do not inhere in the business, but are the result of the want of reasonable care and diligence on the part of the employer. Where, by the exercise of ordinary care and diligence, the employer can make safe, or render less dangerous, the place where the employé is required to work, it is his duty to do so, and, failing in this duty, he is guilty of a continuing act of culpable negligence. The sound rule on this subject is stated by the supreme court in this language:

"Occupations, however important, which cannot be conducted without necessary danger to life, body, or limb, should not be prosecuted at all without all reasonable precautions against such dangers afforded by science. The necessary danger attending them should operate as a prohibition to their pursuit without such safeguards. Indeed, we think it may be laid down as a legal principle that, in all occupations which are attended with great and unusual danger, there must be used all appliances readily attainable known to science for the prevention of accidents, and that the neglect to provide such readily attainable appliances will be regarded as proof of culpable negligence. If an occupation attended with danger can be prosecuted by proper precautions without fatal results, such precautions must be taken by the promoters of the pursuit or employers of laborers thereon. Liability for injuries, following a disregard of such precautions, will otherwise be incurred, and this fact should not be lost sight of." Mather v. Rillston, 156 U. S. 399, 15 Sup. Ct. 464.

The employer cannot relieve himself from this absolute duty, and from all responsibility for failing to discharge it, by simply advising his employés that he does not intend to perform it. Notice that he does not intend to perform his duty in this regard is not equivalent to its performance, and does not relieve him from the duty or from liability for injuries resulting from his failure to perform it. The employé takes all the risks incident to the business, whatever it may be, when that business is conducted in a reasonably prudent and careful manner, and with a due regard for the safety of the employés. Dangers which needlessly imperil human life, and which can be removed

at little cost, are not dangers necessarily incident to the operation of a railroad, but are dangers which it is the duty of the railroad to remove. The necessities of laboring men are often very great. The necessity of providing food for themselves and families may drive them to accept employment at the peril of their lives. But an employer does not obtain a license to kill his employés with impunity by proclaiming his purpose to subject them to unnecessary and needless perils,—to perils that a reasonably prudent man, having a due regard for human life, would remove. Common humanity demands this. Moreover, the state has an interest in the lives of her citizens, and will not permit an employer needlessly to imperil the lives of his employés. The very highest consideration of public policy demands an enforcement of this rule. And the peril is unnecessary and needless where, as in this case, it can be removed at slight expense. Notice of the unnecessary peril in such case goes for nothing. As long as the needless peril is maintained, the employer is guilty of culpable negligence, and when, by reason of such needless peril, an employé is killed, the law presumes he was exercising due care to escape the peril, and the employer is responsible for his death, unless he can prove affirmatively that the employé was guilty of negligence. In such cases the death of the employé testifies that he was in the faithful discharge of his duties and in the exercise of due care, and that his death is the result of the needless peril to which he was subjected.

An application of these reasonable and well-settled principles to the facts of this case will demonstrate that the defendant company was guilty of culpable negligence in erecting and maintaining these bridges.

The defendant's track runs through a cut in the city of Hudson on a grade of 53 feet to the mile. Over this cut are erected and maintained three overhead bridges where as many streets cross the cut. These bridges are in close proximity to each other. Their overhead timbers are at the exact height to strike the head of a brakeman when standing on the top of a box car, in the discharge of his duty. The bridges could have been built high enough to permit the safe passage of brakemen under the bridge, without making the grade of the street any steeper than it is, by a slight extension of the approaches on either side, which could have been done at a trifling expense. There never existed, therefore, any necessity for placing the overhead timbers at this deadly height. It was an act of gross negligence to do so. After their erection, there was not only no insurmountable impediment, but no impediment whatever, in the way of removing the danger by increasing the height of the bridges. The height of the bridges was not determined by a competent engineer, or indeed by any engineer at all, but, in the language of the majority opinion, "by the proper city authorities of the city of Hudson." While this admission exculpates the company's engineer, it convicts the company of negligence. If the defendant can erect three such bridges, it can erect thirty if there are so many streets crossing the cut, and thus make sure of the death of every brakeman who attempts the faithful discharge of his duty at that place.

The sound rule on this subject was announced by this court in the

·case of Railway Co. v. Carpenter, 12 U. S. App. 392, 5 C. C. A. 551, 56 Fed. 451.    We there said:

"The weight of judicial opinion, as well as of sound reason, is in favor of the view that railway companies are under an obligation to all persons who have a right to be on the top of their trains in the discharge of any duty so to construct their overhead bridges, or overhanging structures adjacent to their tracks, that they will not expose such persons to unnecessary risks, or to perils that can easily, and without any great outlay, be avoided."

Owing to the heavy grade of the railroad at the point where this accident occurred, it was essential to the safety of the train and its proper management for the brakeman to be on top of the cars ·to receive ·and transmit signals, and, when necessary, to operate the brake.    The proper discharge· of these important duties required the constant and unremitting application of all his faculties.    He must keep his eyes on the conductor, or rear brakeman, and be ready to receive and transmit signals to the engineer, and he must also be in readiness to apply the brake; his duty and the safety of the train demanded this.

Where a railroad company erected cattle chutes so near its track that a brakeman, while on the ladder of a box car, was struck by one of the chutes, the supreme court of Wisconsin, speaking by Chief Justice Ryan, said:

"If a uniform custom of railroad companies to use structures unnecessarily dangerous to persons employed in operating trains had been proved, we should hesitate gravely before holding that the custom could excuse the danger.    A positive acquiescence, scienter, of one so employed, might, indeed, take away his right of action for injury incurred by such a structure.    But there is public. as well as private, interest.    The operation of railroad trains is essentially highly dangerous, and it is a duty of railroad companies, too plain for discussion, to use all reasonable skill to mitigate, tolerating nothing to aggravate, the necessary danger.    This is not merely a private duty to individuals concerned, but a public duty to the state, concerned in the welfare of its citizens.    And no custom, however uniform or universal, which unnecessarily exposes railroad employés to loss of life or limb, would seem to satisfy a duty which may be regarded as an implied condition of their charters.    We use the word 'unnecessary,' advisedly, distinguishing 'necessity' from 'convenience.'    A convenience may be so great as to be regarded as a practical necessity.    But a convenience merely to lessen a little the labor of driving cattle into cars can hardly rank as a necessity, or excuse such proximity of cattle chutes to the track as to jeopardize life and limb of persons operating trains."    Dorsey v. Construction Co., 42 Wis. 583.

The case at bar is stronger than the case last cited; for in that the brakeman was not, at the time he was killed, in the discharge of any duty which was calculated to absorb all his faculties.    He was simply ascending or descending the ladder which led to the top of the·box car.

And, where a brakeman was injured by coming in contact with the overhead timbers on a bridge, this court said:

"Andrew Mortenson, the defendant in error, was in the employ of the Northern Pacific Railroad Company, the plaintiff in error, as head· brakeman on a freight train running between Brainerd, Minn., and Fargo, N. D.    In making this trip, the train crossed a bridge having overhead tie beams.    This bridge was within the limits of the company's yards at Fargo.    The duties of the defendant in error required him to be upon the top of his train while passing

through the Fargo yards and over this bridge. His usual position was on top of the second or third car from the engine, and he had to stand on the running board of the car in a position that would enable him to receive the signals of the conductor and rear brakeman and transmit them to the engineer. On the 22d day of March, 1890, while standing on the running board of a furniture car in the proper position to receive and transmit the signals, and in the attitude of doing so, as the train passed over the bridge he was struck on the head by one of the overhead timbers of the bridge, and received the injuries for which this suit was brought. Furniture and refrigerator cars, which are in common use on the defendant's road, are about two and one-half feet higher than ordinary box cars. The defendant in error had crossed the bridge in safety a dozens times or more while standing on the top of box cars." 27 U. S. App. 314, 11 C. C. A. 335, and 63 Fed. 530.

And the verdict of the jury finding the defendant company guilty of negligence was upheld by the court.

And see opinion of this court in Railway Co. v. O'Brien, 4 U. S. App. 229, 234, 1 C. C. A. 354, and 49 Fed. 538; Id., 161 U. S. 451, 16 Sup. Ct. 618.

But it is said that the brakeman in the case at bar was guilty of contributory negligence. In reference to this defense it may be observed: First, in the courts of the United States this defense is one which the defendant must prove; second, the rule is that, to establish contributory negligence, "the evidence against the plaintiff must be so clear as to leave no room to doubt, and all the material facts must be conceded or established beyond controversy" (Field, Dam. 519; Beach, Contrib. Neg. § 447; Railway Co. v. Sharp, 27 U. S. App. 334, 11 C. C. A. 337, and 63 Fed. 532; Railway Co. v. Lowell, 151 U. S. 209, 14 Sup. Ct. 281; Bluedorn v. Railway Co., 108 Mo. 439, 18 S. W. 1103; Weller v. Railroad Co., 120 Mo. 635, 23 S. W. 1061, and 25 S. W. 532); third, where the injury results in instant death, as in this case, "the law, out of regard to the instinct of self-preservation, presumes the deceased was, at the time, in the exercise of due care, and this presumption is not overthrown by the mere fact of injury; the burden rests upon the defendant to rebut this presumption" (Flynn v. Railroad Co., 78 Mo. 195, 212).

The presumption arising from this natural instinct of self-preservation stands in the place of positive evidence, and is sufficient to warrant a recovery, in the absence of countervailing testimony. Johnson v. Railroad Co., 20 N. Y. 65, 69; Adams v. Iron Cliffs Co. (Mich.) 44 N. W. 270; Railway Co. v. Price, 29 Md. 420, 438; Railroad Co. v. Nowicki, 46 Ill. App. 566; The City of Naples, 32 U. S. App. 613, 16 C. C. A. 421, and 69 Fed. 794; Allen v. Willard, 57 Pa. St. 374; Schum v. Railroad Co., 107 Pa. St. 8; Fox v. Railroad Co. (N. C.) 31 S. E. 848; Cameron v. Railway Co. (N. D.) 77 N. W. 1016. Nor is this presumption applied only when no one witnesses the accident. It has its application in all cases, and may be strong enough to overcome the testimony of an eyewitness. In the case of McGhee v. Kennedy's Adm'r, 66 Fed. 502, 13 C. C. A. 608, and 31 U. S. App. 366, a witness testified that the deceased saw the train, and attempted to get over before it, and whipped up his horses to do so. The circuit court of appeals stated that, "if that were true, it would have been the duty of the court below to charge the jury to return a verdict for the receivers." But the court said:

"It is very improbable that, if Kennedy had seen the train coming, he would have attempted to cross when so far from the track that he could not reach it with his wagon wheels before the coming of the train. The presumption of fact, and of law, too, would be against the existence of such wanton and reckless negligence, and the plaintiff was entitled to have the jury weigh the credibility of Miss Caldwell's evidence in the light of the circumstances."

This presumption has been twice applied by the supreme court of the United States. In Railway Co. v. Griffith, 159 U. S. 603, 610, 16 Sup. Ct. 105, a case in which death did not result from the accident, the court said:

"Since the absence of any fault on the part of a plaintiff may be inferred from circumstances, and the disposition of persons to take care of themselves, and to keep out of difficulty, may properly be taken into consideration (Railroad Co. v. Gladmon, 15 Wall. 401), it is impossible to hold, in the light of this evidence, as matter of law, that the conduct of plaintiff was such as to defeat a recovery."

The court in this case ignores this well-established rule that it will be presumed that the deceased was in the exercise of due care, and, in the absence of all evidence of negligence, indulges in the presumption that "the accident which occurred in the present case was probably attributable to momentary thoughtlessness on the part of the deceased, and was not occasioned through any want of ordinary care on the part of the defendant company." The assumption that the brakeman's death was "probably attributable to momentary thoughtlessness" illustrates the extremely dangerous character of these overhead structures, for the maintenance of which, at their deadly height, there was not the slightest necessity. But the law will not permit a railroad company needlessly to erect and maintain structures that inflict on its employés the penalty of death for "momentary thoughtlessness." It will be observed that the penalty is inflicted for a supposed momentary forgetfulness of himself and his own safety, not for a momentary forgetfulness of his duties and the safety of the train. Under the rule laid down by the majority of the court, the brakeman's condition is desperate indeed. If he thinks of himself and his own safety instead of his duties and the safety of the train, he imperils the safety of the train and loses his situation, and, if he is so intent on the discharge of his duties that he forgets himself and his own safety but for one moment, he loses his life. Momentary thoughtlessness, however, is not proved, but only assumed as probable. But contributory negligence is never to be assumed or presumed.

The law, instead of presuming, as the court does, that the brakeman's death was "probably attributable to momentary thoughtlessness," presumes that "he was in the exercise of due care and in the discharge of his appropriate duties." What the brakeman was doing at the moment he was killed, whether he was so intently and earnestly engaged in the discharge of his necessary duties that he had neither time nor opportunity to think of himself, or take action for his own safety, and died a martyr to duty, or whether his death was the result of momentary thoughtlessness, are questions for the jury, upon the consideration of all the facts and circumstances of the case.

But it is said telltales, or whiplashes, were suspended over the track to warn brakemen that the train was approaching the bridges. But telltales do not always tell of the danger.    They may be wafted by the wind where they will not touch the brakeman at the moment of passing them, or the brakeman's faculties and physical energies may be so engaged in the necessary and efficient discharge of his duties at the moment of passing that the light touch upon his hat or clothes of the suspended whiplashes will not be felt, and, at the same time, his vision may be so intently focused on the conductor, or other brakeman, for the purpose of receiving or transmitting signals, that neither the whiplashes nor the overhead timbers will fall within the line of his vision.    On this point the remarks of the supreme court of Wisconsin in Dorsey v. Construction Co., supra, are strikingly in point:

"The safety [says Chief Justice Ryan] of railroad trains depends largely upon the exclusive attention of those operating them to the track, and to the trains themselves.  It is not for the interest of railroad companies, or of the public,—with like, if not equal, concern in the safety of trains,—that persons so employed should be charged with any duty or necessity to divert their attention.   And it appears to us very doubtful whether persons operating railroad trains, and passing adjacent objects in rapid motion, with their attention fixed upon their duties, ought, without express proof of knowledge, to be charged with notice of the precise relation of such objects to the track.  And, even with actual notice of the dangerous proximity of adjacent objects, it may well be doubted whether it would be reasonable to expect them, while engaged in their duties, to retain constantly in their minds an accurate profile of the route of their employment, and of collateral places and things, so as to be always, chargeable, as well by night as by day, with notice of the precise relation of the train to adjacent objects.  In the case of objects so near the track as to be possibly dangerous, such a course might well divert their attention from their duty on the train to their own safety in performing it. * * * It is a question for the jury whether, under all the circumstances, he could have avoided the accident by the exercise of reasonable care.  His general knowledge of the position and danger of the cattle chute, his means of knowledge, at the time, of its nearness to him, his necessity of being where he was when he was injured, and his care or want of care for his own safety, under all the circumstances, were proper questions for the jury. * * * Under a sudden pressure of duty, we cannot say that the respondent was bound to exercise the same measure of judgment which we do now in reviewing his conduct.  That would appear to require of him a deliberation and circumspection which the necessity of his duty might preclude."

Manifestly, three bridges in such close proximity, on a steep grade, with suspended whiplashes, are much more dangerous than a single bridge in plain view, on a level road, without suspended whiplashes. It is not the law that a railroad company may, with impunity, needlessly erect and maintain a deathtrap, if it only advises its employés of the fact that it has set the trap for them.    It is not the law that, if an employé providentially escapes death at the trap 50 times, he may then be killed with impunity because he was not sooner killed. It is not the law that his previous escape is, in itself, proof of negligence, when he is finally caught in the trap and killed, but, on the contrary, the presumption is that he was in the exercise of due care and in the faithful discharge of his duties, and that his death was the result of the defendant's culpable negligence in needlessly maintaining such dangerous structures.

But the question of the negligence of the defendant, and the question whether the plaintiff was guilty of contributory negligence, are not questions of law, but questions of fact for the jury. A jury is much more competent to determine these questions than the judges of this court; but, whether this be so or not, the plaintiff in this case has a constitutional right to have them determined by a jury.

In the case of Railroad Co. v. Stout, 17 Wall. 657, the supreme court said:

"Although the facts are undisputed, it is for the jury, and not for the judges, to determine whether proper care was given, or whether they establish negligence."

In the case of Jones v. Railroad Co., 128 U. S. 443, 9 Sup. Ct. 118, the circuit court instructed the jury to render a verdict for the defendant upon the ground that the plaintiff had been guilty of contributory negligence, but the supreme court reversed the judgment. The court, speaking by Mr. Justice Miller, said:

"But we think these questions (of negligence) are for the jury to determine. We see no reason, so long as the jury system is the law of the land, and the jury is made the tribunal to decide disputed questions of fact, why it should not decide such questions as this as well as others. * * * Instead of the course here pursued, a due regard for the respective functions of the court and jury would seem to demand that these questions should have been submitted to the jury, accompanied by such instructions from the presiding judge as would have secured a sound verdict."

In the case of Railway Co. v. Ives, 144 U. S. 409, 417, 12 Sup. Ct. 679, the court said:

"It is only where the facts are such that all reasonable men must draw the same conclusions from them that the question of negligence is ever considered one of law for the court."

See Railroad Co. v. Foley, 3 C. C. A. 589, 53 Fed. 459; Bronson v. Oakes, 40 U. S. App. 413, 22 C. C. A. 520, and 76 Fed. 734.

The opinion of a majority of the court does not express the conclusion "all reasonable men," or any considerable number of such men, would draw from the evidence in this case. The questions are questions of fact, which neither the majority nor the minority of this court is empowered to decide. The constitutional mode of ascertaining the sense of reasonable men on disputed questions of fact in common-law actions is by the verdict of 12 jurymen, and not by the opinions of the judges. It was because the people knew the judges were poor judges of the facts that they committed their decisions to a jury, and every day's experience confirms the wisdom of their action. The plaintiff has a constitutional right to have the facts of her case tried by a jury. The judgment of the circuit court should be reversed, and the cause remanded, with directions to grant a new trial.