CURTIS, Administratrix, Respondent, vs. CHICAGO & NORTH-
WESTERN RAILWAY COMPANY, Appellant.

*February 24 — March 16, 1897.*

*Negligence causing death: Instructions: Court and jury.*

1. Where, in an action against a railroad company for causing the
death of a switchman by its negligence in not keeping a guard
rail properly blocked, there was evidence that the defendant was
guilty of negligence in that respect, and that in consequence
thereof the switchman caught his foot between the guard rail and
the track rail, which caused him to fall under the cars, and there
was no evidence on which it could be held, as a matter of law, that
the deceased assumed the risk or was guilty of contributory neg-
ligence, *held*, that the court properly refused to take the case from
the jury.

2. It was not negligence *per se* for the deceased to go between the cars
while in slow motion, for the purpose of uncoupling them, or to
use a stone while walking along to loosen the coupling pin, where
that had been a common custom in the switchyard, approved by
the yard master, even though he might have signaled the engineer
to stop the car and then have taken the pin out without danger;
nor did he, by choosing the more dangerous mode, assume the risk
of injury resulting, not from that cause, but from the negligence
of the defendant in respect to the guard rail.

3. In such action, there being evidence which, if believed, might have
sustained a finding that the injuries of the deceased occurred in
consequence of his stumbling against the arm of the guard rail
and then slipping, it was error for the court to refuse to charge
the jury that if the injuries were received in that way the plaintiff
could not recover, unless the same point was clearly given in the
general charge.

APPEAL from a judgment of the circuit court for Outa-
gamie county: CHAS. M. WEBB, Judge. *Reversed.*

This action was brought by the plaintiff, as administra-
trix of the estate of her deceased husband, William J. Curtis,
to recover, against the defendant, the pecuniary damages
sustained by reason of his death, caused, as alleged, by the
negligence of the defendant company while he was in its

employ as yard switchman at Appleton, Wisconsin. It is alleged that, as such switchman, it was the duty of the deceased, among other things, to assist in making up trains and switching cars, and to that end to couple and uncouple them, and that it was the defendant's duty to provide safe and suitable appliances for that purpose, and a safe and suitable place in which to do the same; that at the time, etc., the defendant kept and maintained between the rails of one of its tracks in said city and near to one of its switches, a guard rail, about eight feet long, over and upon which track and guard rail cars were switched, moved, coupled, and uncoupled in doing the defendant's business; that said guard rail was kept and maintained by it in such a careless and negligent manner that the space between the guard rail and the main rail was just wide enough to admit the sole and heel of a boot or shoe, and allow the same to become caught and fastened between said rails, and that said space was negligently and carelessly allowed by the defendant, its agents, etc., to remain without proper or sufficient blocking or protection to prevent the feet of its employees from becoming so fastened therein as aforesaid; that on April 30, 1895, the deceased, while in the line of his said duties, switching and uncoupling cars in the usual manner, and while in the exercise of ordinary care on his part, was caught and firmly held in said space by his left foot unavoidably slipping into the same, firmly holding the deceased therein upon and between the tracks in such a manner that the cars of the defendant, then and there moving along said tracks, ran over, crushed, and killed said deceased, etc. The defendant admitted the keeping and maintaining of the guard rail, and alleged that it was properly fastened and blocked, and also admitted that the deceased, while coupling cars, fell near said guard rail, and received injuries, by the trucks of cars passing over and inflicting injuries on him, of which he died; and denied all other allegations.

At the trial the evidence disclosed that the deceased was in the employ of the defendant as yard switchman at Appleton, and had been for about two years, and had been engaged in railroading, working as switchman, upward of nine years.  He had worked over and along by the guard rail in question every day during his employment by the defendant.  There was a large number of switches, switch guards, and guard rails in the yard.  The railway runs at the point in question from the southwest towards the northeast, and the accident happened in a bright, clear day.  The work then in hand was to get five or six cars from the northerly track, and kick one car up the siding, between said northerly track and the main track, and the others were to be set back on the track they were taken from.  The engine was headed south, and the car to be set out was the southern one of the string, and the string was pulled out upon the middle or passing track, and the cars were pushed south on that track.  As the string was pushed south on the passing track, Curtis, the deceased, was just getting down on the left-hand, or southeast, side of the cars, towards the main track.  The witness Wood, who was working with Curtis, was on the top of the end car, and the last car, which, as they backed south, was to be uncoupled and left on the passing or middle track.  Several witnesses testified, on the part of the plaintiff, as to the manner in which the accident happened; and their evidence tended to show that Curtis, in coming out, got his foot caught in the guard rail, and fell out from between the cars, on his left side and partly on his back.  One witness testified that Curtis "got down off the box car, went in between the cars and came out again, and picked something up and went back in again (the cars being in motion).  Witness was about 100 feet distant from him, and next saw him when he fell out from between the cars, and then the cars passed over him.  After he went in again the train moved about ten feet before he fell out, and after he

fell out they moved about fifteen feet before stopping. He saw the cars passing over him, and told the fireman to stop. Curtis said he 'got caught,' and pointed over towards the guard rail." Cramer testified that he saw Curtis come out from between the cars, and he picked something up and went in again. " The next time I saw him, he was hanging onto the car ahead of him, the last car. I saw he had hold of the car, or hold of something on the car, and it seemed to draw him forward. . . . - His body was leaning further forward than his feet. I could not tell if he was moving his feet. . . . He might have remained in that position four or five seconds. The car he was holding onto spread from the others. When he let go, he fell down. I think he was on his left side. That would be facing me. I could not tell where his feet were when he fell. I did not see him stumble or catch his foot. The train was going about as fast as a man would walk." Hoffman testified that he was within twelve feet of Curtis when he was injured, on the side of the main track. "After he picked up the stone he went in between the cars, which were moving slowly,— I guess he was trying to knock the pin out,— and he got caught on the rail. I saw it. And the train slowly moved and knocked him over to the south, with his body outside and his feet inside. He made an effort to move his feet, but could not. He seemed to be caught at the end of the guard rail towards the depot. All that I noticed was that his feet were caught, and the cars pushed his body away. I did not look which foot was caught. I did not notice both feet. He was standing with both feet between the two track rails." Other evidence was produced, circumstantial and otherwise, tending to show that Curtis got his foot caught between the guard rail and main rail, and, being unable to get it out, the wheel of the car passed over his legs, and cut them off between the ankles and the knees, in a diagonal manner; and the shoe of his left foot was torn and crushed,

and the sole partly torn off, and the other shoe was also somewhat torn. Small pieces of bone, and blood spots, were relied on as showing that the injury occurred near the south end of the guard rail.

Considerable evidence was produced tending to show that the guard rail was not properly blocked to prevent switchmen and other operatives getting their feet caught between that rail and the main rail; that the blocking was defective and worn, and did not come up near enough to the top of the rails; that it was loose, and when stepped on it would give way, and teetered up and down; that the blocking was old and much slivered, and insufficient, and defective. There were in defendant's yard forty-one to forty-four blocked switches, and about 250 blockings. Evidence was also produced tending to show that it was a common thing, and indeed customary in this yard, for switchmen to go in between the cars when in motion, to couple or uncouple them, and that such custom was known to and approved by the yard master. It appeared, also, that when a switchman is uncoupling cars he has control of the movements of the train, and may have it stopped, upon his signal, or he may go in between the cars for that purpose, when in slow motion.

Wood testified on behalf of the defendant: "I tried to uncouple it, but could not get the pin out, and I climbed on the deadwood on the north end of the car. Curtis was just coming in with a stone, and he drove the pin loose. I stood on there, and as he drove the pin out I picked it up and laid it on the deadwood. When we first started down the passing track, Curtis had tried to draw the pin out of the drawbar, and then I tried it. Then Curtis went out after the stone, and tried to drive it out. When we started to go out he stumbled, and as he was pitching out he stumbled on the north end or arm of the guard rail, about the middle of the arm. I was within touching distance of

him at the time. He was between the two cars. His right foot stumbled against the guard rail about an inch from the toe of his right foot. It was right on top of the rail. His foot slipped off the rail at the time, and he fell to.the left, and sidewise, between the cars. The drawhead had parted about eight inches." After the car had passed over Curtis and severed his legs, the cars did not move more than about ten feet, and he crawled out across the main track. "At the time he was getting the pin out he was on the ground, walking with one .foot on each side of the rail. I was looking right down at him, and could see where his feet were."

Evidence was produced on the part of the defendant to show that the blocking of the guard rail at this point was sufficient and in suitable condition, and to rebut the charge of negligence made against it in that behalf.

The defendant, at the close of the plaintiff's case, moved for a nonsuit, which was denied, and at the close of all the evidence asked the court to direct a verdict for the defendant, but this was refused. The defendant then asked the court to instruct the jury that "If the jury find that the injuries to the deceased were received in consequence of his slipping from or stumbling against the arm of the guard rail, then the plaintiff cannot recover." This instruction was re-fused. The court charged the jury, in substance, that if they found that the defendant was negligent in respect to the manner in which the guard rail was constructed and maintained, and that .such negligence was the proximate cause of the accident which occasioned the death of Curtis, then the plaintiff was entitled to verdict. If both or either of such alleged facts are not satisfactorily so proven, then the plaintiff was not, and the defendant was, entitled to their verdict. The court, in its charge to the jury, in speaking of the contention of the defendant that the deceased was guilty of contributory negligence in having gone between the moving cars, with a stone, to loosen the pin and

Curtis vs. Chicago & Northwestern R. Co.

uncouple them, and having done which, and while attempting to pass out from between the cars was injured, said to the jury that "The defense insist that this was negligence on the part of the deceased, *and that in attempting to pass from between the cars he stumbled against some object, and was overtaken and crushed by a moving car.* Evidence in the case, if deemed by you credible, tends to prove this contention of the defendant, and if, *in the manner already stated,* you should believe that the deceased received his injuries *in the way just mentioned,* in such case your verdict should be for the defendant. . . . If you shall thus conclude that he was negligent in passing between the moving cars in the manner and for the purpose stated, *and that in attempting to pass out he stumbled as claimed,* and in consequence thereof received his injuries, *or* if his injuries were in any manner caused, in whole or in part, by such negligence of the deceased, if you find that he was negligent in the said respect claimed, you should find for the defendant."

For the appellant there was a brief by *Fish & Cary,* and oral argument by *John T. Fish.* They contended that the testimony shows that the injury to the deceased was not caused by his getting his foot between the guard rail and the track rail, but by his stumbling against the arm of the guard rail while walking between the tracks. The deceased was guilty of contributory negligence in going between the cars while moving in order to uncouple them, and in using a stone to drive out the coupling pin, when he might have stopped the car by a signal to the engineer, and then have got it out without danger. *Goltz v. M., L. S. & W. R. Co.* 76 Wis. 136; *Foster v. C. & A. R. Co.* 84 Ill. 164. By so doing he assumed the risk thereby incurred. *Casey v. C., St. P., M. & O. R. Co.* 90 Wis. 113; *Scidmore v. M., L. S. & W. R. Co.* 89 id. 188; *Culbertson v. M. & N. R. Co.* 88 id. 567; *Kennedy v. Lake Superior T. & T. Co.* 87 id. 28, 34; *Haley v. Jump River L. Co.* 81 id. 412, 421; *Finnell v. D., L.*

*& W. R. Co.* 129 N. Y. 669, 670; *Lockwood v. C. & N. W. R. Co.* 55 Wis. 50, 60; *Loranger v. L. S. & M. S. R. Co.* 104 Mich. 80; *Appel v. B., N. Y. & P. R. Co.* 111 N. Y. 550; *Pennsylvania Co. v. Hankey,* 93 Ill. 580; *Peoria, D. & E. R. Co. v. Puckett,* 42 Ill. App. 642; *Peoria, D. & E. R. Co. v. Ross,* 55 id. 638. If there was a custom of so going between cars to uncouple them, it was established by the switchmen for their own convenience, and they thereby assumed the risks. *Kroy v. C., R. I. & P. R. Co.* 32 Iowa, 363; *Chicago, R. I. & P. R. Co. v. Clark,* 108 Ill. 118.

For the respondent there was a brief by *Greene, Vroman & Fairchild,* and oral argument by *C. E. Vroman.*

PINNEY, J. 1. We think that, in view of the evidence, the circuit court rightly denied the defendant's motion for a nonsuit, and also the request that a verdict be directed in favor of the defendant. The substance of the charge of negligence is that the guard rail was constructed, kept, and maintained in a careless and negligent manner, and that the space between it and the main rail was just wide enough to admit the sole and the heel of a boot or shoe, and allow the same to become caught and fastened, and that such space, in the present instance, was negligently and unnecessarily allowed by the defendant and its agents to remain without sufficient blocking or other protection, whereby, without fault on the part of the plaintiff's intestate, while in the due performance of his duties, he was caught by the heel of his left foot, and held there, so that the defendant's moving train ran over him, causing his death. The necessity of proper blocking of guard rails is not denied. The evidence tends to show that the defendant was guilty of negligence in this respect, which was the proximate cause of the death of the plaintiff's intestate. It is not deemed necessary to set forth or discuss the evidence upon this point. It is sufficient to say that in our judgment it was such as to entitle the plaintiff to have the

case sent to the jury, under proper instructions as to the law. *Valin v. M. & N. R. Co.* 82 Wis. 5, 6, and cases cited; *Kane v. N. C. R. Co.* 128 U. S. 91. The plaintiff's intestate assumed the risks and dangers fairly and naturally incident to his employment, and if an unusual element or cause of danger was open and obvious, such that, in the exercise of ordinary care, he ought to have observed it and comprehended the danger likely to ensue, he assumed such risk, if he continued in the defendant's employ. But the duties of yard employees are dangerous, and the company owes them the duty of careful and vigilant inspection to discover and remedy any fault, defect, or want of repair in the tracks, guard rails, switches, etc. The duty of the employee to exercise ordinary care as to any risk or cause of danger does not serve to relieve the company of its duty of careful and vigilant inspection, or devolve it on the employee; for the latter, while in the exercise of ordinary care, and until admonished in some manner to the contrary, has a right to assume that the company has properly discharged the duties it owes to him to secure his safety. And the company must be held to have known what by the exercise of careful and vigilant inspection it might have ascertained. *Paine v. Eastern R. Co.* 91 Wis. 340; *Promer v. M., L. S. & W. R. Co.* 90 Wis. 215, and cases cited; *Goodrich v. N. Y. C. & H. R. R. Co.* 116 N. Y. 398. The case is very different from what it would have been if the duties of the plaintiff's intestate had required him to observe and make safe the condition of the guard rails and blockings in the yard. "This court has repeatedly held, in effect, that, before an employee can be held to have assumed an unusual or extraordinary risk, he must know, or have reasonable means of knowing, of the precise danger to which he is exposed and which he thus assumes; and that a mere vague surmise of the possibility of danger is not enough to take the case from the jury." *Kennedy v. L. S. T. & T. R. Co.* 93 Wis. 32; *Dorsey v. Phillips*

*& C. Const. Co.* 42 Wis. 583. The evidence does not disclose any ground upon which it can be properly held, as a matter of law, that the plaintiff's intestate assumed the risk of danger arising from the defective condition or insufficient blocking of the guard rail, to which the plaintiff imputes the accident.

It is vigorously contended that the plaintiff's intestate was guilty of contributory negligence in going in between the cars to uncouple them, while in slow motion, using a stone, as he walked along, to loosen the coupling pin; that he could have signaled the engineer to stop, and could have taken the pin out without any danger, and that he had his choice which course he would take, and took the most dangerous one, and was therefore guilty of contributory negligence; and that there can be no recovery. There was evidence of a custom or usage in this yard, which had the consent and approbation of the yard master, for the yard switchmen to go between the cars, coupling or uncoupling them, while in slow motion. There was no evidence to show that such an act is necessarily dangerous, or one which switchmen of ordinary care and prudence would not undertake; and, in view of the evidence as to the custom and usage, we cannot say, as a matter of law, that such an act is negligence, *per se*, which would defeat a recovery. It is enough to say that, if an act of negligence, the plaintiff's intestate assumed the risk of all damages or injury proximately resulting from it, but not those resulting wholly from the negligence of the defendant in failing to keep the guard rail properly blocked. The evidence tends to show that the uncoupling of the car was safely accomplished while the train was in motion, and that the accident resulted solely in consequence of defects in the guard rail and blocking. The plaintiff's case may well rest on this contention, and whether it is true or not is a question for the jury.

2. The court was requested, on behalf of the defendant, to

instruct the jury that, if they found "that the injuries to the deceased were received in consequence of his slipping from or stumbling against the arm of the guard rail, then the plaintiff cannot recover in this action," but this instruction was refused. There was testimony before the jury sufficient, if believed by them, to sustain a verdict in favor of the defendant upon the ground specified in the instruction. If the plaintiff's intestate received his injuries in consequence of his slipping or stumbling against the arm of the guard rail, then the injuries which caused the death of the plaintiff's intestate were accidental, and such at least as were incident to his employment, and the risk of which, in such case, must be considered to have been assumed by him in entering upon his employment. The instruction so asked was expressed in clear and accurate terms, and was warranted by competent evidence. The defendant had a right to have it given to the jury as asked. *Campbell v. Campbell,* 54 Wis. 90–98. It was not clearly and directly stated in the general charge. It may be said, perhaps, to be an inference from the statement of the court that if both the defendant's alleged negligence, and that it was the immediate or proximate cause of the accident which occasioned the death of Curtis, were established to the satisfaction of their minds, then the plaintiff was entitled to a verdict, "but, if both or either of such alleged facts are not so satisfactorily proved, then the plaintiff is not, and the defendant is, entitled to your verdict." We do not think it was sufficiently covered or embraced in the instruction on the subject of alleged contributory negligence, consisting of the plaintiff's intestate "having gone between the moving cars with a stone to loosen the pin and uncouple the cars, having done which, and while attempting to pass out from between the cars, he was injured; that the defense insist that this was negligence on the part of the deceased, and that in attempting to pass from between the cars he stumbled against some object, and was overtaken

and crushed by a moving car;" that "if, in the manner already stated, you should believe that the deceased received his injuries *in the way just mentioned,* in such case your verdict should be for the defendant;" and also that if he "*was negligent* in passing between the moving cars in the manner and for the purpose stated, *and that* in attempting to pass out he stumbled as claimed, and in consequence thereof received his injuries, . . . you should find for the defendant." The matter embraced in the instruction asked was, in the instructions thus given, so combined and connected with the matter of negligence on the part of the deceased as to deprive the defendant of all benefit of a proper instruction on this point. The instructions left the jury to understand that, in addition to proof that the injuries of the deceased were received in consequence of his slipping from or stumbling against the arm of the guard rail, in order to constitute a defense it must also appear that there was concurring negligence on the part of the deceased. The proposition as to the negligence of the deceased, and as to his alleged slipping and stumbling against the arm of the guard rail, are improperly combined in the instructions given. It was error to refuse the instruction asked, in view of the fact that it was not sufficiently and plainly embraced and covered in the general charge. In the most favorable view that can be taken of the general charge on this subject, it was indefinite and misleading.

There were some questions presented in relation to the admissibility of evidence, but, as they may not arise upon another trial, they do not require attention.

*By the Court.*— The judgment of the circuit court is reversed, and the cause remanded for a new trial.