LOUIS J. PIERSON, Trustee, v. CHICAGO & NORTHWESTERN RAILWAY COMPANY, Appellant.

**Railroads:** CONSTRUCTION OF FOOT GUARD: NEGLIGENCE: EVIDENCE.
1 In an action for injuries to a brakeman caused by an alleged defective foot guard at the switch, the evidence is held to present a question of negligence on the part of the railway company in constructing the guard, which was for the jury.

**Assumption of risk.** A railway brakeman does not assume the
2 danger incident to defective blocking at a switch, of which he had no actual knowledge.

**Contributory negligence.** The question of whether a brakeman was
3 guilty of contributory negligence in going between freight cars for the purpose of uncoupling the same, rather than passing to the other side of the train and using the safety appliance for that purpose, was, under the circumstances, one for the jury.

**Evidence:** DUE CARE: CUSTOM. Where, in a particular emergency,
4 the question of due care on the part of a brakeman in un-

coupling freight cars arises, the general custom or usage in performing such service may be shown.

**Evidence:** NEGLIGENCE. In an action for an injury resulting to a brakeman from uncoupling freight cars, he may show that upon entering the service he was directed by the superintendent to accompany a train crew and observe their manner of performing the work and govern himself accordingly, and that upon such trip cars were uncoupled in the manner employed by plaintiff when injured.

*Appeal from Linn District Court.*—HON. J. H. PRESTON, Judge.

MONDAY, JANUARY 16, 1905.

ACTION by plaintiff, as assignee of N. F. Harrington, to recover damages for personal injuries received by the latter while in defendant's employ as brakeman, resulting, as alleged, from the negligence of defendant in failing to place proper and sufficient foot guards or blocks between the main rail and the guard rail of its track at a switch; the result of the defect being that Harrington's foot was caught between the rails while he was attempting to uncouple freight cars in motion, and that his foot and ankle were run over and injured so that amputation of his leg above the ankle became necessary. Verdict for plaintiff for $7,500, and from judgment thereon defendant appeals.—*Affirmed.*

*James C. Davis,* for appellant.

*Rickel, Crocker & Tourtellot,* for appellee.

McCLAIN, J.—At the time of the accident, Harrington, in the discharge of his duties as brakeman in the employ of defendant, was engaged in attempting to uncouple from the engine two freight cars which were being kicked upon a side track at the station of Wright, on a branch line of defendant's railroad, between Belle Plaine and Muchakinock. The en-

gine and cars were provided with safety appliances for coupling and uncoupling, by means of which it was intended that a brakeman, in such operation, need not step inside the rails. A part of the appliance consisted of a rod across the end of the car, connected with the coupling pin, and provided at the outside end with a handle, by the use of which the coupling pin could be raised. The rod on the rear of the tender extended clear across, and was provided with a handle or lever at each end, so that it could be operated from either side; but the rods on the cars extended to only one side, being so arranged that, whichever way the car was being operated, there would be a lever or handle on the right-hand side of the forward end of the car. The engine and cars in question were being backed westward on a side track which was north of the main track, and Harrington after turning the switch so as to throw the cars on the side track — the switch stand being also on the north side of the main track — waited until the engine and cars had been backed far enough, so that the coupling between the tender and the adjacent car was about opposite the switch stand, when he attempted to uncouple the cars from the tender by raising the lever of the coupling appliance attached to the tender. For some reason not explained in the evidence, this appliance failed to work, and Harrington was unable by the use of it to raise the coupling pin out of the socket so as to release the cars from the tender. He thereupon communicated to the engineer, through the fireman, a signal to stop; and, after the engine and cars had been brought to a standstill, he gave another signal, indicating that he desired the engine to be again put in motion slowly backward, and at the same time stepped between the tender and cars, and attempted to raise with his left hand the pin in the coupler attached to the freight car. While thus engaged, walking between the tender and the car, inside the rail, as the evidence tends to show, his foot became caught between the guard rail and the main rail; and, in attempting to throw himself from between

the car and the tender, and outside of the rail, his foot, which
had in some way been loosened, was caught under the wheels
of the tender, and crushed.

The questions involved in the case relate to the negli-
gence of the company, the assumption of risk by Harrington,
and Harrington's contributory negligence, and the case may
be most conveniently disposed of by considering the points
raised as to each of these questions.

I.   It, is contended for appellant that there was no evi-
dence of negligence on its part as to the condition of the block-
ing between the guard rail and the main rail, and that there

1. CONSTRUC-      was no defect in such blocking which could be
TION OF
FOOT GUARD:       attributed to defendant as constituting a fault.
negligence;
evidence.         But the evidence tends to show that the block-
ing in the main rail (that is, the block of wood fitted in below
the ball of the rail, and intended to make the space between
such blocking on the main rail and a similar blocking on the
guard rail as narrow as the space between the balls of the
two rails, so that a person's foot could not be caught under
the ball of either rail) was defective, in that it did not come
out as far as the end of the blocking of the guard rail, and
also in that it did not come up flush with the ball of the rail,
and left a small space, in which the sole of a shoe might be
caught, and also that in the blocking at the side of the guard
rail was a groove or crack which also furnished an oppor-
tunity for the sole of a shoe to become caught; the combined
result of these defects being that a person's foot might be
caught and held between the rails, so that it could not be ex-
tricated without drawing it backward; the very danger
which the blocking of the rails was intended to prevent.
Whether these defects, which it appears had existed for such
length of time that the company was chargeable with knowl-
edge thereof, were of such nature that their existence con-
stituted negligence, was clearly a question for the jury.
The court cannot say, as a matter of law, that, in the exercise
of reasonable diligence, the company should not have so

blocked these rails that Harrington's foot would not have become so firmly caught therein that he could not draw it out without pulling it backward; nor can we say that a space of a fourth of an inch between the ball of the main rail and the blocking, or a groove a quarter of an inch deep in the blocking of the guard rail, was so minute and insignificant a defect that its existence should not have been noticed by the defendant in the discharge of its duty to furnish a safe track for the use of its employés, and removed, or the danger therefrom in some way obviated, nor that it was not negligence on the part of the defendant to originally so arrange this blocking that such defects should exist. We are clear that, as to the negligence of the defendant, the evidence made a case to go to the jury.

II.    As to assumption of risk, there is no evidence whatever that Harrington had actual knowledge, or could be chargeable with knowledge, of the defect in this particular

2. ASSUMPTION  blocking. He had had occasion only two or
   OF RISK.     three times to engage in coupling or uncoupling cars at this station, and there is no evidence that he had been so engaged at this particular switch — much less, that he had had occasion to notice the condition of this blocking. It cannot be reasonably contended that a brakeman engaged in discharging his duties over a long line of road must inform himself, at his peril, of the condition of the blocking at each switch on the line, and it is not in any way shown that he had any actual knowledge of this particular defect. *Trott v. Chicago, R. I. & P. R. Co.,* 115 Iowa, 80. It is argued for appellant that Harrington was charged with knowledge that there was more or less danger necessarily incident to guard rails, and that he assumed the risk of such danger. Let this be conceded. Nevertheless he did not assume the risk of a defective blocking, unless he was in some way charged with knowledge thereof; and the evidence tends to show that his injury did not result from stumbling over or striking his foot against the rail or blocking, as he had

reason to assume that it existed, but from catching his foot in a defective blocking, of which he was not charged with knowledge. The argument that Harrington should have avoided the danger incident to the guard rail, if conceded to be sound, would lead to the result that an entire failure to block, or a faulty blocking, no matter how defective, would not be ground of complaint, even though the employé had no knowledge in the particular case of the failure or defect.

III.   The principal controversy in this case is as to whether Harrington was guilty of contributory negligence in the method adopted for uncoupling the car from the tender

3. Contribu-
tory neg-
ligence.

of the engine.   It is argued for appellant that, as the tender and the car next to it were provided with automatic couplers for the purpose of enabling employés to make the uncoupling without going between the cars, it was contributory negligence on the part of Harrington to step between the tender and car, inside the rail, while the engine was in motion, for the purpose of pulling the pin. We think it ought to be fully conceded, in view of the federal and state legislation requiring railroads to equip their cars and engines with automatic couplers, that it would be contributory negligence on the part of an employé to ignore the safety appliance provided, where it could reasonably be used, and resort to the method formerly in use, confessedly more dangerous, of stepping between moving cars, within the rail, for the purpose of making an uncoupling.   *Morris v. Duluth, S. S. & A. R. Co.,* 108 Fed. 747, (47 C. C. A. 661); *Gilbert v. Burlington, C. R. & N. R. Co.,* 128 Fed. 529 (63 C. C. A. 27).   But it appears from the evidence that Harrington found that the automatic appliance on the tender, which was the only one within his reach as he attempted to uncouple the car from the tender on the north side, would not work, and it thereupon became necessary for him to exercise the reasonable judgment of a prudent man as to how the uncoupling should be effected; and it is not claimed by counsel, nor would it be reasonable to argue, that Har-

rington would have been justified in refusing to uncouple
the cars in any other manner than by the use of the safety ap-
pliance, necessitating the delay of the train until the diffi-
culty in the use of the appliance could be discovered, and it
could be made to work.    The contention of counsel is that
three or four different ways, all of them less dangerous than
stepping inside of the rail while the engine was in motion
to pull the pin, might have been resorted to by Harrington;
and it is true that the witnesses for the defendant testify that
these different ways would have been safe, and were available.
They say that Harrington, before signaling the engineer
to back up the engine, might have crawled under the cars
to the other side, and used the coupling device on the freight
car, or might have gone around the engine to the other side
for that purpose, or might, by an intricate set of maneuvers,
not necessary to explain, have got the cars separated by means
of pulling the pin and opening the coupling hooks before
the cars were kicked back.    It is conceded, however, that it
was impracticable to uncouple the car by means of pulling
the pin by hand while the engine was standing still, for the
arrangement of the automatic coupling device is such that
the pin can be raised and the cars effectually uncoupled only
while in motion, whether the uncoupling is done by the use
of the handle of the automatic device, or by pulling the pin
by hand.    It seems to us, therefore, that the only practical
methods which Harrington could have used for effecting an
uncoupling were either to step inside of the rail while the
engine was moving, or, by crawling under the coupling or
by going around the engine, attempt to make use of the au-
tomatic coupler on the car, which would have been available
to him on the other side of the track.    And let it be noticed
here that Harrington was on the usual side when he at-
tempted to make the uncoupling.    He was on the side of the
track where he had just used the switch, and where he would
necessarily again use the switch after the uncoupling had
been effected and the engine had moved forward, ready to

back down again on the main track for coupling to the balance of the train.

The concrete question is, then, whether after Harrington had attempted, in a perfectly proper manner, to effect the uncoupling by the safety appliance provided for that purpose, and had been unable to do so, he was, as a matter of law, guilty of contributory negligence in not going to the other side of the train for the purpose of attempting the uncoupling by means of the safety appliance on the car, and, instead of doing so, stepping inside the rail while the engine was in motion for the purpose of pulling the pin by hand. In support of the proposition that Harrington's conduct was, as a matter of law, negligent, counsel rely upon *Morris v. Duluth, S. S. & A. R. Co.*, supra; *Gilbert v. Burlington, C. R. & N. R. Co.*, supra; *Dawson v. Chicago, R. I. & P. R. Co.*, 114 Fed. 870 (52 C. C. A. 286). In the Morris Case it is held that where a comparatively safe and a more dangerous way are known to the servant, by means of which he may discharge his duty, it is negligence for him to select the more dangerous method. The same proposition is repeated in the Gilbert Case, in which Sanborn, Circuit Judge, expresses the views of the majority of the Circuit Court of Appeals that the brakeman, finding that the safety device available on the side of the train where he was would not work, was guilty of contributory negligence, as a matter of law, in going between the cars to uncouple them by hand, when he might have effected the uncoupling by going to the other side of the train, and using the safety device there available. It is conceded in the opinion, for the purpose of the case, though not decided, that, where the safety appliance furnished to uncouple cars cannot be made to accomplish that end, it is sometimes necessary for brakement to go between moving cars to uncouple them, and that, when that necessity exists, it is not negligence for them to pursue this course. But in that case, Thayer, Circuit Judge, expresses himself as not prepared to say that the employé

was guilty of negligence because he did not try to lift the coupling by the lever on the opposite side of the train before stepping between the cars, and bases his assent to the conclusion of the other two judges that the brakeman was negligent on the ground that he had not used reasonable means to ascertain whether the coupling device within reach would operate to uncouple the cars before stepping inside the rail to pull the pin by hand.   In the Dawson Case the question was whether a brakeman was negligent in swinging between a flat car and a box car, while in motion, for the purpose of riding on the brake beam of the flat car, using the handhold provided in accordance with an act of Congress, when he might have made use of the stirrup and handholds on the side of the box car without incurring the risk of swinging in between cars; and Thayer, Circuit Judge, expressing the views of the majority, finds that the brakeman was, as a matter of law, guilty of contributory negligence, on the ground that it was clearly apparent that he exposed himself to unnecessary risk, while Caldwell, Circuit Judge, dissents on the ground that the rule stated by the majority prescribes a course for brakemen impracticable in practice, and contrary to established usage in such cases; insisting that the question of negligence of the brakeman was, under the circumstances, one for the jury.

We think that, under the decisions of our own court, the question whether, when Harrington found that the safety appliance immediately available to him would not work, he acted as a reasonably prudent man, under the circumstances, in attempting to make the uncoupling by stepping between the rails after the engine was in motion, rather than incur the additional delay necessary to reach the other side of the train, and try to effect the uncoupling by the appliance on the freight car, was for the jury.   We have not recognized any such rule as that it is, in law, negligent to perform a service in the more dangerous of two methods in which it may be performed, regardless of the circumstances under

which the employé is called upon to act. On the contrary, we have held that, even where the facts are not in dispute, it should be left to the jury to say whether a course of conduct is negligent, if reasonable men may honestly differ as to the conclusion to be drawn from such undisputed facts. *Bach v. Iowa Central R. Co.*, 112 Iowa, 241; *Barnhart v. Chicago, M. & St. P. R. Co.*, 97 Iowa, 654; *Whitsett v. Chicago, R. I. & P. R. Co.*, 67 Iowa, 150; *Milne v. Walker*, 59 Iowa, 186. Therefore it was properly left to the jury in this case to say, not simply whether it would have been safer for Harrington to crawl under the coupling, or go around ahead of the engine to the other side of the train, and attempt to uncouple the car by means of the safety appliance, than to attempt to uncouple it by hand, as he did, but whether, under all the circumstances, in view of the necessity for prompt action which is involved in the railway service, he was negligent in adopting the method which he did adopt, even though another might have been safer. *Bucklew v. Central Iowa R. Co.*, 64 Iowa, 603; *Gibson v. Burlington, C. R. & N. R. Co.*, 107 Iowa, 596; *Curtis v. Chicago N. W. R. Co.*, 95 Wis. 460 (70 N. W. 665); *Ashman v. Flint & P. M. R. Co.*, 90 Mich. 567 (51 N. W. 645); *Florida Central & P. R. Co. v. Mooney*, 40 Fla. 17 (24 South, 148); *Brinkmeier v. Missouri Pacific R. Co.*, (Kan. Sup.) 77 Pac.

But it is significant as bearing on the question of Harrington's exercise of care, that while witnesses testified that it would have been safer to go to the other side of the train, and use the safety appliance there, they all agreed that, in their practical experience as railroad men, they never knew of that method being followed or expected under such circumstances, and the witnesses substantially agree that the method pursued by Harrington is the one usually pursued by a brakeman when he is unable to effect the uncoupling by means of the safety appliance immediately at hand. Counsel for ap-

pellant insist, however, that the court erred in admitting
evidence of this custom on the part of brakemen in de-
fendant's employ, and in allowing the jury to take such cus-
tom into account as bearing on Harrington's exercise of due
care in this instance, contending that no custom or usage will
justify or excuse negligence; and many authorities are cited
in support of this general proposition, of which the follow-
ing are especially relied upon:   *Kroy v. Chicago, R. I. & P.
R. Co.,* 32 Iowa, 357; *Hamilton v. Des Moines Valley R.
Co.,* 36 Iowa, 31; *Muldowney v. Illinois Central R. Co.,* 36
Iowa, 462; *Ferguson v. Central Iowa R. Co.,* 58 Iowa, 293.
But without stopping to analyze these cases in detail, it is
sufficient to say that none of them directly holds that the
customary and approved method of performing a service
cannot be shown, as bearing on the question whether an em-
ployé performing such service in that manner was negligent
in so doing.   On the other hand, it has been decided in
many cases in this and other states that proof of the usual
and customary method of performing a service may be re-
ceived, as bearing on the question of the employé's exercise
of reasonable care in following the method indicated by cus-
tom and usage.   Thus, in *Whitsett v. Chicago, R. I. & P.
R. Co.,* 67 Iowa, 150, it is said, with reference to the action
of a brakeman in stepping from a freight car to the tender
of the engine in order to dismount from the train by means of
the engine steps to operate a switch, instead of dismounting
by means of the ladder provided on the freight car: " In
the absence of express rule or direction prescribing the par-
ticular course he should pursue under the circumstances, he
was required to choose between two courses; and if, in mak-
ing that choice, he adopted the course usually followed under
like circumstances by men in that calling, that fact would
have a very important bearing upon the question whether
he exercised due care in making the choice." With refer-
ence to admissibility of evidence of custom or usage in such
cases, this court, in *Lowe v. Chicago, St. P., M. & O. R.*

*Co.*, 89 Iowa, 420, used this language in a case where it was claimed that the acts of an employé constituted contributory negligence, because in violation of the rules of the company agreed to by him, although in accordance with the usage or custom of other employés under similar circumstances: " There is a conflict in the cases, some of them holding that a usage or custom cannot be shown as against a rule or contract like that under consideration; but we think it is clear that it is competent to show a usage or custom on the part of the employés of defendant at variance with and in violation of such a rule when the defendant has, through its proper officers, knowledge of its violation, and their conduct shows that they acquiesced in such violation." If custom or usage may be shown as justifying a course of conduct which is contrary to the express regulation of the company, certainly it is admissible to show what was the proper or reasonable course of conduct under particular circumstances, in the absence of any regulation. Without further amplification, the following cases may be cited as fully supporting the proposition that where the question is whether, in a particular emergency, the employé was negligent in the method pursued by him in rendering a service, the general custom or usage as to the method of rendering such service may be shown: *Spaulding v. Chicago, St. P. & K. C. R. Co.*, 98 Iowa, 205; *Branz v. Omaha & C. B. R. & B. Co.*, 120 Iowa, 406; *Ashman v. Flint & P. M. R. Co.*, 90 Mich. 567 (51 N. W. Rep. 645); *Curtis v. Chicago N. W. R. Co.*, 95 Wis. 460 (70 N. W. Rep. 665); *Kane v. Northern Central R. Co.*, 128 U. S. 91 (9 Sup. Ct. 16, 32 L. Ed. 339); *Hannah v. Connecticut River R. Co.*, 154 Mass. 529 (28 N. E. Rep. 682).

Evidence was also admitted, over defendant's objection, tending to show that when Harrington entered its employ, about three years before the accident, he was directed by the superintendent to go with a train crew and see how they performed their work, and to govern himself accordingly in dis-

charging his duties as brakeman, and that on this instruction trip the brakeman, under circumstances similar to those which confronted Harrington at the time of this accident, went between the cars inside the rail, while the engine was in motion, to effect an uncoupling, instead of waiting to go around to the other side of the train. Certainly, if defendant saw fit to instruct Harrington that it was proper to uncouple cars in this manner, under the circumstances, rather than incur the delay necessarily incident to going to the other side of the train, he was justified in assuming that this was the method of procedure required of him. True, he assumed the risks incident to this method of procedure, so far as they could be reasonably known to him; but he did not assume the additional risk involved in the existence of defective blocking, of which he had no knowledge.

5. EVIDENCE: negligence.

Many questions are elaborately discussed as to the correctness of instructions asked and refused, as well as the correctness of those given; but an examination of the points urged with reference to the giving and refusal of instructions satisfies us that the case was correctly presented to the jury, in view of the rules of law announced in this opinion. The judgment is therefore *affirmed.*