### J. M. WILLIAMS v. ATLANTIC COAST LINE RAILROAD COMPANY.

(Filed 10 March, 1915.)

1. **Master and Servant—Duty of Master—Safe Place to Work—Negligence.**

   Where the master fails in his duty to furnish his servant a safe place to work, which is the proximate cause of a personal injury received by him in the course of his employment, the master is answerable in damages.

2. **Same — Railroads — Brakeman — Obstructions Near Track—Contributory Negligence—Trials—Evidence—Nonsuit.**

   Where there is evidence that a railroad company has failed to provide a ladder at the end of a box car on its freight train, ordinarily used by its employees to reach the top of its box cars, and its brakeman, in the course of his employment, is prevented from climbing to the top of the car by the overhanging eaves of a car shed, from the position he was in after boarding the train; and that after passing from the shed at a speed of 10 or 12 miles an hour, and while climbing from his position towards the top of the car in the manner left open to him, the act of climbing requiring him to look upward, he was struck from the car by a shanty 7 feet high, 200 feet from the car shed and so close to the track as to render his passage between the car and the shanty impossible; and that the shanty could readily have been previously moved or placed by the defendant so as to have permitted the plaintiff to pass in safety: *Held*, sufficient to be submitted to the jury upon the issue of defendant's actionable negligence in not providing the plaintiff a safe place to work; and that the courts would not hold as a matter of law that the plaintiff was guilty of contributory negligence.

3. **Evidence—Nonsuit—Interpretation of Statutes.**

   In an action by an employee of a railroad company for damages for a personal injury alleged to have been negligently inflicted, a motion to nonsuit upon the evidence on the ground that the plaintiff was guilty of contributory negligence, since the enactment of chapter 6, Public Laws of 1913, cannot be sustained.

APPEAL by plaintiff from *Bond, J.*, at January Term, 1914, of WAYNE.

Action to recover damages for personal injury caused, as the plaintiff alleges, by the negligence of the defendant, in that it failed to provide him a reasonably safe place in which to work. Evidence was introduced by the plaintiff and the jury returned the following verdict:

1. Was the injury to plaintiff caused by the negligence of the defendant, as alleged? Answer: "Yes."

2. If so, did the plaintiff by his own negligence contribute to such injury? Answer: "No."

3. What damage, if any, is plaintiff entitled to recover? Answer: "$8,000."

His Honor set aside the verdict as a matter of law, upon the ground that in no view of the evidence was the plaintiff entitled to recover, and the plaintiff excepted and appealed.

*Langston, Allen & Taylor for plaintiff.*
*O. H. Guion for defendant.*

ALLEN, J. The plaintiff was a brakeman, working in the yards of the defendant company at Rocky Mount, and while ascending a box car by the side ladder, in the performance of his duties, was struck by the eaves of a small shanty about 7 feet high, in such close proximity to the track that it was impossible to clear the shanty in the act of climbing the side of the car. The shanty was located about 15 feet south of a car shed. The plaintiff mounted the car about five car lengths from the shanty, but could not go to the top, as there was no end ladder on the car, until after he passed the car shed, because of the overhanging eaves. The train was running at a speed of 10 to 12 miles per hour. The shanty could not be seen from where he mounted the car, because a line of posts supporting the car shed obstructed his view. Immediately upon passing the car shed, he began to ascend the car, as his duties required him to do, looking up, and was struck by the shanty and seriously injured. Plaintiff knew that there was a shanty in the railroad yards, but did not know of its location with reference to the track and had not been warned of its dangerous proximity to the track, and had not been working on the job but three days when the injury occurred.

The plaintiff admitted that one standing on the ladder would have nothing to prevent him from seeing the shanty after he left the shed, and that a person in the act of climbing could not pass the shanty without being knocked off, unless he was paying particular attention, and then only by squeezing himself close to the ladder.

The contention of the defendant is that these facts present no case for the consideration of a jury; that they furnish no evidence of negligence on the part of the defendant, and, on the contrary, prove the contributory negligence of the plaintiff.

The correctness of the first position depends on the duty resting upon the defendant, and whether the facts show a breach of this duty, which proximately caused the injury complained of.

In *Buchanan v. Lumber Co., ante,* 40, *Justice Hoke,* speaking for the Court, said: "It is fully established with us that an employer, in the exercise of reasonable care, must provide for his employees a safe place to do his work, and a failure of duty in this respect will constitute negligence. *Cook v. Cranberry Co.,* 161 N. C., 39; *Jackson v. Lumber Co.,* 158 N. C., 805; *Tanner v. Lumber Co.,* 140 N. C., 475. An examination of the authorities will show that the position is very insistent in the case of railroads where a breach of duty in this respect is not unlikely to result in serious and often fatal injuries." And this principle was applied to evidence tending to show that, for a week or more, the plaintiff's road had been left with a limb or snag deep in the ground at one end and leaning over towards the railroad track in such manner that it day by day scraped along the sides of the engine and cars and where it was liable, at any time, to cause an injury of some sort to the train or its employees.

In *Texas and Pacific Ry. Co. v. Swearingen,* 196 U. S., 61, the negligence alleged on the part of the company was the existence, in close proximity to a switch track, of a scale box, by striking against which the plaintiff was injured while doing duty as a switchman, and the Court, dealing with the question of negligence, said: "*Prima facie,* the location of scales where the tracks were only the standard distance apart, and where a space of less than 2 feet was left for the movements of a switchman between the side of a freight car and the scale box, encumbered, as he would be in the nighttime, with a lantern employed for the purpose of signaling, did not incontestably establish the performance by the defendant company of the duty imposed upon it to use due care to provide a reasonably safe place for the use of a switchman in its employ. And so far from the proof making it certain that the necessity of the situation required the erection of the structure between tracks Nos. 1 and 2 as existing, there was proof that the railway company owned unoccupied ground, intended for other tracks, to the south of track No. 4, justifying the inference that the distance between tracks Nos. 1 and 2 might have been increased, and the employment of the scales thus rendered less hazardous to switchmen, or that the scales might have been removed to a safer location.

"It was, therefore, properly a question for the determination of the jury whether or not the scales were maintained in a reasonably safe place, and if not, whether the plaintiff had notice thereof."

This statement of the law is peculiarly pertinent to the case before us in view of the evidence for the plaintiff that the shanty which caused the injury was used for employees working around the transfer shed to warm in, and that there would have been no danger if it had been turned round.

In *Georgia Pac. Ry. v. Davis,* 92 Ala., 308, the plaintiff, a brakeman, was injured while on a side ladder by a rock projecting from the side of a cut, and it was said by the Court: "In view of the exigencies of the service, involving the use of ladders on the sides of cars by employees, and this while the train is in motion, and in view of the custom of resorting to such use, which the evidence here goes to show, we do not hesitate to affirm that it was the part of ordinary care on the part of the defendant—assuming, as the jury might have found, the truth of this testimony—to construct and maintain its roadway so as not only to admit of the safe passage of its cars, but also free from any projection or obstruction which would endanger the persons of employees in the use of these side ladders while the train is proceeding on its way, and that the defendant's failure in this regard rendered it liable to the plaintiff for any damages resulting to him from such failure, unless his own negligence proximately contributed thereto."

This principle was applied in *Dorsey v. Construction Co.,* 42 Wis., 584, in behalf of a conductor of a freight train, who was injured while ascending a side ladder by coming in contact with a cattle chute placed near the track; in *Flanders v. R. R.,* 51 Minn., 193, in behalf of a brakeman who was descending a ladder and was injured by striking a section house; and in *Allen v. R. R.,* 57 Iowa, in behalf of a brakeman injured by striking a cattle chute while getting off a moving train.

*Heilig v. R. R.,* 152 N. C., 471, is also in point. In that case the plaintiff, an employee, was injured while riding on the steps of the engine, according to custom, by coming in contact with the posts of a coal chute. A judgment of nonsuit entered in the Superior Court was set aside, this Court saying: "It (the railroad) cannot permit obstacles to exist so close to the tracks traversed by such engines as to endanger the life and limb of its employees using its engines in accordance with a custom so long established."

The facts in all these cases were more favorable to the defendant than in the case before us, because in them the structures causing injury were built for convenience in operating the railroad, while in this case the shanty was to enable employees to warm, and could have been easily turned without inconvenience to any one so that it would have been safe to pass it.

Applying these authorities to the evidence, we are of opinion there was evidence of negligence in that the defendant failed to provide a reasonably safe place for the plaintiff to work, and that this failure of duty was the cause of his injury.

The second contention of the defendant, as to the contributory negligence of the plaintiff, cannot be raised upon a motion to nonsuit, as the injury occurred after the enactment of chapter 6, Public Laws 1913,

which abolishes contributory negligence as a defense in actions by employees for personal injury. But if considered as the law was before that statute was adopted, it could not be held upon the evidence, as matter of law, that the plaintiff by his own negligence contributed to his injury.

It is true, he knew the general location of the shanty, but he had not passed it on the car, and did not know its distance from the track. He had not been warned of danger, and had the right to assume that the defendant had performed its duty to provide him a reasonably safe place to work.

It is also true that he could have seen the location of the shanty after he passed the car shed, but the shanty was not then more than 15 or 20 feet distant, and as the train was running 10 or 12 miles an hour, he had only a second of time, and was engaged in performing a duty (climbing to the top of the car) which would naturally cause him to look up.

In *Buchanan v. Lumber Co., supra,* a similar contention was made by the defendant, and the Court said, in dealing with it: "He was only out on this running-board where the hands were accustomed to ride on their way to work, the train being in motion, and the duty on him, under such circumstances, to observe and note an obstruction of this character and correctly estimate its proper effect—a small stick, leaning over towards the rail—was a very different obligation from that incumbent on defendant company and its employees, charged with the especial duty of keeping the track and roadbed in a reasonably safe condition. In the latter case it would undoubtedly import menace tending to inculpate, whereas to the intestate it might very well be a question of debate and one that, under our law, must be referred to the jury. . . . The prayer, in effect, requested the Court to rule on the question of intestate's conduct as a matter of law, and his Honor submitted it for the consideration of the jury, and the position, as we have stated, is in accord with our decisions."

Also, in *R. R. v. Swearingen, supra:* "The record shows that there was evidence tending to establish that the track scale box was not erected in a reasonably safe place, and that although the plaintiff knew that the scale box was situated adjacent to track No. 2, he did not know that it was so near that it could not be passed, in the performance of his duties as a switchman, without danger. This is apparent when it is borne in mind that the plaintiff testified, in substance, that prior to the accident he had not closely inspected the scale box or taken measurements of the distance from the box to the north rail of track No. 2, and that he did not do more than cursorily observe the structure from a distance, and that he was unaware of the nearness of the scale box to the north rail of track No. 2. . . . The plaintiff was entitled to assume that the defendant company had used due care to provide a reasonably safe place

for the doing by him of the work for which he had been employed, and as the fact that the defendant company might not have performed such duty in respect to the scale box in question was not so patent as to be readily observable, the court could not declare, in view of the testimony of the plaintiff as to his actual want of knowledge of the danger, that he had assumed the hazard incident to the actual situation."

In *Dorsey v. Construction Co., supra,* the evidence of contributory negligence was stronger than in this case, and the Court held it was a question for the jury, saying: "The safety of railroad trains depends largely upon the exclusive attention of those operating them, to the track, and to the trains themselves. It is not for the interest of railroad companies, or of the public—with like, if not equal, concern in the safety of trains—that persons so employed should be charged with any duty or necessity to divert their attention. And it appears to us very doubtful whether persons operating railroad trains, and passing adjacent objects in rapid motion, with their attention fixed upon their duties, ought, without express proof of knowledge, to be charged with notice of the precise relation of such objects to the track. . . . Be that as it may, the question cannot well be considered as arising here; for, though it certainly appears that the respondent knew of the general relation of the cattle chute to the track, it does not appear that he knew, or had such means of information as would charge him with knowing, its precise relation to the track, its distance, and its danger. . . . What constitutes negligence, or that want of care on the part of the person receiving the injury, which deprives him of any remedy, and neutralizes, as it were, the wrong of the party by whom the injury is inflicted, is a question depending on various circumstances. What may be negligence under some circumstances and conditions may not under others. As observed by counsel, it is not a fact to be testified to, but can only be inferred from the *res gestæ*—from the facts given in evidence. Hence it may, in general, be said to be a conclusion of fact to be drawn by the jury under proper instructions from the court. It is always so where the fact, or rather the conclusion, is fairly debatable, or rests in doubt. . . . Under this rule, it appears quite manifest that the court could not hold the respondent, as matter of law, guilty of contributory negligence. It was a question for the jury whether, under all the circumstances, he could have avoided the accident by the exercise of reasonable care. His general knowledge of the position and danger of the cattle chute, his means of knowledge, at the time, of its nearness to him, his necessity of being where he was when he was injured, and his care or want of care for his own safety, under all the circumstances, were proper questions for the jury." -

We are therefore of opinion there is error in the ruling of his Honor, and the judgment of nonsuit is set aside and the verdict reinstated.

Judgment will be entered in the Superior Court upon the verdict.

Reversed.