VIRGINIAN RY. CO. v. HALSTEAD.*

(Circuit Court of Appeals, Fourth Circuit. April 24, 1919.)

No. 1676.

1. MASTER AND SERVANT ⬥286(15)—ACTION FOR INJURY TO SERVANT—QUESTIONS FOR JURY—SWITCH TARGET NEAR TRACK.

Where a brakeman, required in course of duty to mount the ladder on the side of a moving car, was injured by his foot being struck by a switch target six or seven inches from the passing ladder, proof that the construction of the switch was in accordance with the custom of railroads is evidence of due care, but not conclusive, and the court cannot hold as matter of law that so narrow a space was reasonably safe.

2. MASTER AND SERVANT ⬥286(1), 288(1)—ACTION FOR INJURY TO SERVANT—QUESTIONS FOR JURY.

In an action for injury to a brakeman, the questions of negligence and assumption of risk held properly submitted to the jury.

In Error to the District Court of the United States for the Eastern District of Virginia, at Norfolk; Edmund Waddill, Jr., Judge.

Action at law by Vernon Halstead, by Nora Halstead, his next friend, against the Virginian Railway Company. Judgment for plaintiff, and defendant brings error. Affirmed.

Walter H. Taylor, of Norfolk, Va. (Loyall, Taylor & White, of Norfolk, Va., on the brief), for plaintiff in error.

Thomas H. Willcox, of Norfolk, Va. (Earl W. White and Willcox, Cooke & Willcox, all of Norfolk, Va., on the brief), for defendant in error.

Before PRITCHARD, KNAPP, and WOODS, Circuit Judges.

WOODS, Circuit Judge. [1] The plaintiff Vernon Halstead recovered a judgment against Virginian Railway Company for injuries alleged to be the result of defendant's negligence. The facts are not in dispute. At the time of the accident, plaintiff was a brakeman in defendant's barney yard between Jamestown Boulevard and Sewell's Point, in Norfolk county, Va. In this yard cars loaded with coal are collected and send by gravity to the scales and thence to the coal piers. For this movement it was necessary for the brakeman to throw the switch in order to shift the cars from one track to another, and then mount the moving car by a ladder and set the brakes. On August 26, 1917, this duty was required of Halstead. He threw the switch, went between the switch and the track a few feet beyond the switch in the direction from which the cars were coming, stepped on the ladder, and while pulling himself up to a standing position was struck on the foot by the switch target as the cars passed.

The defendant assigns error in the refusal to instruct the jury to find for defendant for lack of any evidence of negligence. The charge of negligence depends entirely on the uncontroverted fact that there was a clear space of only six to seven inches between the ladder and the switch target, alleged to be insufficient for the safety of the brake-

⬥For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

*Certiorari denied 250 U. S. —, 40 Sup. Ct. 10, 64 L. Ed. —.

man mounting the car. Atkins, a former employé on the yard, testified that the distance between the car and the target was unsafe; that he had so reported it to his superiors; that some of the switches on the yard had been changed for that reason; that he had been grazed by this target while standing on the ladder. Garrett, another employé, testified that he had changed some of the switches because conductors and brakemen had complained of the danger, and he believed the clear space to be too small; that he did not change this particular switch because the embankment was too narrow. There was also testimony that plaintiff's course in throwing the switch and stepping on the ladder was usual and proper.

On behalf of defendant there was testimony to the effect that a man standing straight in the stirrup will pass the target safely, but if he leans out he is liable to be caught. Hanes, superintendent of this coal terminal, testified that the rod of the switch target was standard; that the distance of the target from the track was the standard distance-used, not only by defendant, but by other railroads.

The defendant's first position is that the construction of the switch, including the length of the switch rod, and the distance between the passing car and the switch target, was an engineering question, and that, since the construction was proved to be standard, the court should have held it to be reasonably safe as a matter of law, and therefore should have directed a verdict for the defendant. To sustain this position defendant relies on Tuttle v. Milwaukee Ry. Co., 122 U. S. 189, 7 Sup. Ct. 1166, 30 L. Ed. 1114, wherein the court said:

"We have carefully read the evidence presented by the bill of exceptions, and although it appears that the curve was a very sharp one at the place where the accident happened, yet we do not think that public policy requires the courts to lay down any rule of law to restrict a railroad company as to the curves it shall use in its freight depots and yards, where the safety of passengers and the public is not involved; much less that it should be left to the varying and uncertain opinions of juries to determine such an engineering question. (For analogous cases as to the right of a manufacturer to choose the kind of machinery he will use in his business, see Richards v. Rough, 53 Mich. 212 [18 N. W. 785]; Hayden v. Smithville Man. Co., 29 Conn. 548, 558.) The interest of railroad companies themselves is so strongly in favor of easy curves as a means of facilitating the movement of their cars that it may well be left to the discretion of their officers and engineers in what manner to construct them for the proper transaction of their business in yards, etc. It must be a very extraordinary case, indeed, in which their discretion in this matter should be interfered with in determining their obligations to their employés. The brakemen and others employed to work in such situations must decide for themselves whether they will encounter the hazards incidental thereto; and, if they decide to do so, they must be content to assume the risks."

In that case the brakeman was injured by the slipping of the drawbars while he was coupling cars from the inside of a curve. The court further held that the tendency of the drawbars to slip on the curve was an obvious danger which the brakeman assumed.

The language quoted must be accepted as an accurate statement of the law applicable to the facts of the case, but the doctrine must be strictly limited, unless we are to allow railroad experts to take away

from juries and themselves decide questions of their own negligence. As we had occasion to say in Norfolk & W. Ry. Co. v. Gillespie, 224 Fed. 316, 139 C. C. A. 552, the engineers may be the final judges of the proper construction of a curve; but when the elevations and safeguards were proved, "the issue which was properly submitted to the jury was whether, considering the method of construction which the defendant had chosen to adopt, it was not negligence to require its engineers to run over the curve at the speed required by the schedule." Union Pacific Ry. Co. v. O'Brien, 49 Fed. 538–547, 1 C. C. A. 354. So, in the present case, the proper distance between the switch target and the passing car may be altogether an engineering question, under ordinary conditions. But jurors know as well as engineers the space that a man's body occupies and the way men usually handle themselves. Hence when, in the operation of cars and switches, brakemen are required to place their bodies between a switch target and a passing car, proof that the construction of the switch was in accordance with the custom of railroads is evidence of due care, but not conclusive evidence. The issue of what is a reasonably safe clear space is to be decided by the jury under all the evidence, in the light of common observation and experience. Surely there is no principle which requires a court to say as a matter of law that a clear space of only six or seven inches was safe.

[2] The evidence required the defense of assumption of risk to be submitted to the jury. Plaintiff testified he had been working as a brakeman only about a month, and had never worked at this switch before the time of the accident, that he did not know the distance from a passing car to the switch target, and that he had never been warned of the danger. It is true that the distance between the railroad track and the target was obvious, but that did not make obvious the distance between the side of the car and the target. Seaboard Air Line Ry. Co. v. Horton, 233 U. S. 492, 34 Sup. Ct. 635, 58 L. Ed. 1062, L. R. A. 1915C, 1, Ann. Cas. 1915B, 475; Norfolk & W. Ry. Co. v. Gillespie, 224 Fed. 316–324, 139 C. C. A. 552; Gila R. Co. v. Hall, 232 U. S. 94, 34 Sup. Ct. 229, 58 L. Ed. 521. Nor was it plainly evident that the plaintiff without reason chose the dangerous place of mounting the car on the east side of the target, when there was a safe place on the west side after the car had passed the target, for he testified that the car would have reached the stopping place before he could have got up on the west side. The issues of negligence of defendant and assumption of risk and negligence of plaintiff were properly submitted to the jury.

Affirmed.