F. M. TRANSOU, ADMINISTRATOR, v. DIRECTOR GENERAL ET AL.

(Filed 9 November, 1921.)

**Evidence— Nonsuit— Trials— Railroads—Director General—War—Railroads—Questions for Jury.**

In an action for a wrongful death, C. S., 160, against the Director General of Railroads and a railway company under his control as a war measure, there was evidence tending to show that a wood yard had its warehouse located about five feet from an industrial track of defendant, continuing from which was a platform extending up to within ten inches from the passing trains, and a truck several feet long and four feet wide, used for hauling the wood about, was customarily left there by day and night, when not in actual use, sometimes on the platform and at others on the ground. In pursuance of his duty and under the immediate order of his superior, the plaintiff's intestate, a brakeman, was required, at night, to cross over between the cars of defendant's freight train and to get upon the cars by end ladders thereon; and after a backing movement of the train, without light on the lead end of the car, was found dead, badly mutilated, at the end of a car where was also found the truck which had been caught on one of these ladders and splintered to pieces on an edge of the platform which had been broken into by the impact. Viewing this evidence most favorably to the plaintiff, as required on a motion as of nonsuit: *Held*, the evidence was sufficient as to the Director General, but the motion was properly allowed as to the railroad company. *Mo. Pac. R. R. Co. v. Ault*, U. S. Supreme Court (opinion filed 1 June, 1921).

Appeal by plaintiff from *Webb, J.*, at March Term, 1921, of Forsyth.

Civil action to recover damages under C. S., 160, for an alleged wrongful death.

Plaintiff's intestate on the night of August 15, 1919, was brakeman on the Winston-Salem yards of the Southern Railway Company, which, at that time, was being operated by the Director General of Railroads.

Just north of Seventh street in Winston-Salem a switch track branched off from the main line of the railroad running south, and on the west side of this industrial track, as it was called, after it crossed Seventh street, was a woodyard building belonging to the defendant Hicks. This building was about eighteen feet high. Beside the switch track, for a part of the distance of this building, is a platform several feet long and about four feet high that extended up to within ten inches of passing trains. The part of the building where there was no platform stood about five feet from the track. Hicks' woodyard used a truck for hauling wood around the yard and carrying wood to load and unload cars. The truck was several feet long and four feet wide. For some months this truck was left at night, and during the day when not in use, on the platform and on the ground beside the track within eight or ten inches of passing cars, and was so placed for some time before the death of plaintiff's intestate.

There was a string of twelve cars on this industrial track, and at about 1 o'clock at night of August 15th the switch engine and crew were to get out two of these cars. The engine backed in, coupled up to this string of cars, pulled out and cut the twelfth car down the main line. The train was to then back into the switch with eleven cars remaining. Plaintiff's intestate was ordered by the conductor in charge to set the brakes on the car placed on the main line and to come over and catch the backing train on the switch track, get on top, give, receive and pass signals to the engineman. There was no light on lead end of backing cars, though all members of the train crew had lanterns and it was a clear night. The ladders going to the top of all box cars at the front end as the cars were backing in were on the west side next to the woodyard building.

The deceased set the brakes on the car on the main line and the train backed into the switch track. The truck was caught by a ladder of the backing train, torn to pieces, and parts of the broken truck were scattered along the track for fifteen or twenty feet. The top of the platform at one place was torn up and the deceased was found on the ground beside the train, right at a car ladder that had parts of this broken truck hanging to it. His clothes were torn to pieces, his legs, arms, head and entire body bruised and broken, and he was covered with blood.

At the close of plaintiff's evidence the court entered judgment of nonsuit as to the Director General of Railroads and the Southern Railway Company, and from this ruling plaintiff appealed.

*Raymond G. Parker and J. C. Wallace for plaintiff.*
*Manly, Hendren & Womble for defendant.*

STACY, J. Considering the evidence in its most favorable light for the plaintiff, the accepted position on a motion to nonsuit, we think the case should have been submitted to the jury. True, no one testified with exactness as to how the deceased met his death. But the objective and physical facts speak louder than witnesses. Can there be any doubt of the truth of the allegation that the moving train, the demolished truck and the torn up platform all played a part in producing the injury which resulted in Transou's death? It would seem that an affirmative answer might be entirely permissible, and not altogether unlikely. At least, such is a reasonable inference arising from the attendant conditions and surrounding circumstances. Maybe the jury will take a different view of the matter, and maybe not. At any rate, upon the record—it appearing that the deceased was at the time engaged in the discharge of his duties as a brakeman—we think the question of liability is one for the jury under proper instructions from the court. But, of course, we express no opinion as to how it should be found. *Southern Ry. Co. v. Diseker,* 81 S. E., 269.

In *Brown v. Missouri K. & T. Ry. Co.,* 212 S. W., 27, a case somewhat similar to the one at bar, the Supreme Court of Missouri states the law as follows:

"Railroad companies will not be held to have exercised ordinary care to provide reasonably safe conditions for their employees to do their work when they permit standpipes, telegraph poles, fences, buildings, and other structures to be maintained so close to their tracks that employees being on the outside of their moving cars or engines, in the performance of their duties, are crushed by them," and to which should be added, "unless due care is used and proper means are employed to prevent such injuries."

To like effect are our own decisions. *Heilig v. R. R.,* 152 N. C., 469; *Williams v. R. R.,* 168 N. C., 363, and cases there cited. The question has been so fully discussed in *Williams v. R. R.* that we deem it unnecessary to repeat here what has so recently been said there. See, also, *Virginia Ry. Co. v. Halstead,* 258 Fed., 428, and *Sanderson v. Boston & M. R. R.,* 101 Atlantic, 40, cases directly in point.

With the case going back for a new trial, we refrain from further discussion, as we do not wish to prejudice the rights of any of the parties.

The judgment of nonsuit as to the Southern Railway Company will be sustained under authority of the recent decision of the United States Supreme Court in *Mo. Pac. R. R. Co. v. Ault,* decided 1 June, 1921, and reported in the Advanced Opinions of that Court at page 647, No. 16, 1 July, 1921. But as to the Director General of Railroads, the judgment will be reversed and a new trial ordered.

Affirmed as to the Southern Railway Company.

Reversed as to the Director General of Railroads.